EMERY WHITLOCK *vs.* HORATIO WEST AND THE TOWN OF WILTON.

The statute (Rev. Stat. Tit. 3, Sec. 30,) which empowers towns to enact by-laws for the restraining of cattle from going at large, although it does not mention impounding as a mode by which cattle may be so restrained, yet authorizes towns in such by-laws to provide for the impounding of cattle.

The various statutes providing for the establishment and maintenance of pounds, the confinement of animals therein, the disposition to be made of such animals, and the means of redress to be exercised by persons whose animals are unlawfully impounded, were intended to apply to the impounding of animals under the authority of such by-laws, as well as to such impounding under the authority of any of our general statutes.

By-laws of towns being usually more inartificially expressed than other laws, are especially entitled to a reasonable construction.

Although the statute makes it the duty of selectmen to "erect and maintain" pounds, they may fully discharge their duty by purchasing or hiring to be used exclusively as pounds, suitable enclosures already erected.

An act of selectmen which they alone have a right to perform, does not, by reason of the fact that it is performed in accordance with a request of the town expressed by its vote, become the act of the town, or any less the sole act of the selectmen.

TRESPASS, for the taking and carrying away of two steers and a heifer belonging to the plaintiff, tried to the jury upon the general issue with notice of special matters of defence.

The taking of the cattle by West, one of the defendants, was admitted. The defendants, protesting that the town of Wilton could not be liable in any event, justified the taking by West, on the ground that he, being then a hayward of the town of Wilton, lawfully seized the cattle while they were running at large on a highway within that town contrary to a certain by-law of the town, and impounded them under the authority of the by-law.

It was admitted that one of the cattle was afterwards sold by a constable of the town, under regular proceedings, to pay the fees and charges growing out of the impounding and detention of the cattle; that the balance, after deducting those expenses from the proceeds of the sale, was duly tendered to the plaintiff; and that the two other cattle were returned to him.

The by-law in question, with its preamble, was as follows :

"At a special town meeting of the inhabitants of the town of Wilton, legally warned and held at the town house in said Wilton, on the 7th day of April, 1851, Abijah Betts was chosen moderator. *       *       *

" *Voted,* that all cattle shall be restrained from going at large on the highways and commons in said town.

" *Voted,* that all sheep shall be restrained from going at large on the highways and commons in said town.

" *Voted,* that all swine shall be restrained from going at large on the highways and commons in said town ; and if so found shall be impounded. And the penalty for each creature aforesaid, so impounded, shall be twenty-five cents, one-

half thereof to the pound keeper, and one-half to the impounder.

" *Voted*, that the foregoing by-law be published four weeks successively in the Norwalk Gazette, a newspaper printed at Norwalk, in the county of Fairfield, and then to become a by-law of the said town of Wilton. Wilton, April 15th, 1851."

The by-law being offered in evidence by the defendants, the plaintiff objected; and the same having been admitted, subject to the objection, the plaintiff requested the court to charge the jury that the by-law was in its terms illegal and void, and afforded no justification to the defendants. The court did not so charge the jury, but instructed them that the by-law was in its terms legal and valid.

The defendants offered evidence to prove that the selectmen of the town, before the 27th day of June, 1854, established a pound in said town for the impounding and restraining therein of all animals that might be liable by law to be impounded, by hiring of one Belden, for the sole purpose of a pound, an enclosure which had previously been used by Belden as a barn-yard, located on his homestead in said Wilton and adjoining his barn and the highway; and that this enclosure was suitable and proper for a pound; and that the cattle in question were impounded by West, as a hayward of the town, he having found them running at large on the highways of the town, in violation of the by-law.

The plaintiff denied that the selectmen had established any legal pound in the town, and insisted that the enclosure in which his cattle had been confined was hired by the town of Wilton for a temporary purpose only; and for the purpose of rebutting any evidence of the defendants that the selectmen had established a legal pound, the plaintiff offered in evidence the following vote of the town, passed at a town-meeting held on the 6th day of October, 1851, viz. : " Voted, that the selectmen be instructed to hire Samuel Belden's barn-yard for a pound, till a pound can be erected." The plaintiff further offered evidence to prove that in pursuance of this vote the selectmen did afterward hire the barn-yard

in question, and pay rent therefor, at the rate of two dollars a year, out of the treasury of the town; and that after the yard was so hired, Belden had kept or permitted to be kept in the yard the horses and cattle of his relatives and neighbors; but no evidence was offered to show that the selectmen of the town, or either of them, knew of any such use of the yard by Belden or others.

The plaintiff requested the court to charge the jury that the enclosure so procured and used was not a legal pound. The court did not so charge the jury, but instructed them that towns could not by vote establish pounds, as that duty was by statute committed to the selectmen; that this duty of the selectmen could be performed by procuring an enclosure adapted to the restraining of such animals as might be put therein, and by appropriating such enclosure to the separate and exclusive use of the town, placing it within the control of the town for the purpose of restraining and confining therein such beasts as might be lawfully impounded; that such enclosure might be procured by erecting, purchasing, or hiring such a place, it being sufficient that it be under the entire and exclusive control of the town for this purpose; that the question in this part of the case was, "Did the selectmen of the town of Wilton, before the 27th day of June, 1854, procure the enclosure in which West, one of the defendants, confined the cattle of the plaintiff, for a pound, and was it on that day, or before said cattle were confined therein, appropriated and set apart for the separate and exclusive use of said town for a pound, and was it a good and sufficient enclosure for that purpose?" and that this was a question of fact for the determination of the jury.*

* The 30th Sec. of the act "concerning communities and corporations" provides that "every town, at a lawful meeting warned for that purpose, shall have power to make by-laws restraining horses, cattle, asses, mules, swine, sheep, and geese from going at large and for regulating such as shall go at large." The 85th Sec. of the same act provides that "the selectmen of every town shall erect, maintain, and keep in repair, at the expense of the town, a good and sufficient pound or pounds, for the impounding and restraining therein of all creatures which shall be found damage-feasant, or which shall be liable by law to be impounded; and if any town shall be without a sufficient pound for

The jury returned a verdict for the defendants; and thereupon the plaintiff moved for a new trial for errors in the charge of the court.

*Hawley*, for the plaintiff.

1. The defendants must justify under either the general law or the by-law. ·1st. The general law furnishes no justification; for cattle are not liable to be impounded for being at large on the highway. Rev. Stat., tit. 3, §§ 30, 87, 97. id., tit. 15, § 12. id., tit. 48, § 4. Public Acts of 1855, chap. 59. 2nd. They derive no justification from the by-law; towns can enforce their by-laws by penalties only, recoverable by action, not by impounding; 1 Chitty Pl., 102; 2 Com. Dig., 163; *Kirk* v. *Nowill*, 1 T. R., 118; and never by distress unless there be special power given them; Ang. & A. on Cor., § 340; *Hart* v. *Mayor of Albany*, 9 Wend., 571; *Kirk* v. *Nowill*, supra; and in such case distress must be under a warrant legally granted. *Perrine* v. *Chesapeake & Delaware Canal Co.*, 9 How., 172. *Hart* v. *Mayor of Albany*, supra. Therefore if the by-law professedly authorized impounding, it would be void;—void, too, for being repugnant to the general law imposing twenty-five cents poundage. *Southport* v. *Ogden*, 23 Conn., 128. Jacob's Law. Dict., tit. *By-law.* If void in part, the by-law is void *in toto.* 2 Com. Dig., 163. But the by-law does not profess or purport to prescribe impounding for *cattle*—it is for *swine* only that impounding is prescribed. The three votes are entirely distinct and independent. " Each creature so impounded," necessarily and by every rule of grammatical construction refers to swine only, for they are the only creatures which, by the by-law, may be impounded. The by-law is penal and is to be construed strictly. Besides, the by-law, so far as it authorizes impounding, is void, for it provides no mode of disposing of creatures thus impounded. It authorizes no sale, yet here the cattle were sold. ˙

2. The charge as to the pound was erroneous. It does

the purpose aforesaid, the selectmen shall forfeit the sum of two dollars per month, for every month that such town is without a sufficient pound or pounds."

not meet our claims. The court should have charged distinctly that a hiring by the selectmen, pursuant to the town vote, being the act of the town, did not make the barn-yard a pound. A pound must be literally *erected* by the selectmen, or, at least, as obviously, notoriously, and exclusively devoted to, and set apart for, that purpose, as if literally so erected. Besides, there should be a record of its establishment.

*Dutton* and *Carter*, for the defendants.

1. The by-law is to receive a reasonable construction. The expression " if so found, shall be impounded," applies as well to the cattle and sheep as to the swine. The expression " each creature so impounded," would not have been used if swine alone had been intended. It is not to be presumed that any body of reasonable men would prohibit cattle and sheep absolutely from going at large, and swine only under a penalty. There is nothing to show how the original votes were punctuated ; and if they were separated only by commas, all ambiguity would disappear. Such a punctuation will be presumed to have been intended as is required by a sensible construction.

2. The charge, in relation to the hiring of the pound was correct. 1st. The word " erect" is used in the statute because an erection is the ordinary mode of providing a pound. Rev. Stat., tit. 3, sec. 85. " Erect " sometimes means to " institute " or " establish." Webster's Dic. The only object of the law was to secure a safe enclosure for cattle under the control of the officers of the town, and in this view it is clearly immaterial whether the enclosure was built or hired. The selectmen make themselves liable if they fail to provide one for two months ; yet sometimes it would be impossible for them to procure land to build one upon, and the law makes no provision for such a contingency. 2nd. The vote of the town could have no effect. It would be only advisory ; and if the selectmen follow the advice of the town in a matter which by the statute is devolved upon them, their action would still be their own, and not that of the town. 3d.

There is no claim that this enclosure was not sufficient for the purpose, and the jury have found that it was.

3. The town had authority to pass the by-law. Rev. Stat., tit. 3, sec. 30. Although the statute does not, in express terms, authorize a town to provide in such a by-law for the impounding of cattle, yet this is clearly involved in the authority to pass by-laws for the restraint of cattle, this being the ordinary and established mode of restraining them, and the only mode in which it can be done effectually.

STORRS, C. J.    When the acts complained of in this declaration were done, we had no general statute prohibiting cattle from going at large on highways and commons; but the 30th section of the *act concerning communities and corporations*, (Rev. Stat. tit. 3,) empowered "every town, at a lawful meeting warned for that purpose," "to make by-laws for restraining cattle," and the other animals therein mentioned, "from going at large, and for regulating such as shall go at large." The defendants, on the trial, justified the acts complained of under a by-law of the town of Wilton which is recited in this motion.

The plaintiff, in the first place, claims that this by-law, or at least the part of it which provides that the animals therein mentioned, if found going at large, shall be impounded, is invalid, on the ground that the power of enforcing in that mode, the penalty prescribed by such by-laws, is not given by the statute by which they are authorized, and therefore that such penalty can be recovered only by an appropriate common law action. In our opinion this claim is not well founded. Conceding, for the purposes of the present case, that the towns would not have the power of providing by a by-law that animals going at large might be impounded, unless it was conferred by the statute just mentioned, it was clearly competent for the legislature to confer such power upon the towns; and, when we look at the terms of that statute, and the subject of it, and the object which it had in view, we are of the opinion that, by a just construction of it, that power was expressly given by it to the towns. In this

view of it, the cases cited by the plaintiff are plainly inapplicable, as they were decided on the ground that the powers conferred by or claimed under the by-laws in question in those cases, exceeded those which the corporations who made them were empowered to exercise. In authorizing towns to pass by-laws for *restraining* certain kinds of animals from going at large, we think that the legislature did not intend only that they might impose a penalty for their violation upon the owners, to be recovered by an ordinary action, which would of course operate as no direct restraint or confinement of the animals, and leave them at large to do all the mischief which was designed to be prevented, but that they further intended to give to the towns power to adopt such suitable and appropriate regulations on the subject as would specifically prevent and hinder the animals themselves from being at large on highways and commons. The language used in the statute conferring the power upon towns to pass such by-laws, is peculiar, and more appropriate to authorize them to impose a specific restraint on the animals themselves than a mere prohibition upon their owners. It provides that they may pass by-laws for *restraining*, that is, for preventing or hindering the animals from going at large, and implies direct action upon the animals themselves. According to a familiar principle in relation to such a grant of power, the towns may use all the necessary and proper means for exercising it. It is obvious that no means could be more necessary or proper to carry this power into effect than to confine them in some suitable enclosure. And no enclosure could be more suitable than a pound established by law, and under the supervision and control of officers appointed for that purpose. From an examination of the various general statutes providing for the establishment of pounds and the manner in which they shall be maintained and kept, the impounding of creatures in them, their care and sustenance while in the pound, and their final disposition and discharge, in connection with the remedies prescribed where they are unlawfully impounded, we are also of the opinion that they were intended to apply as well to creatures which should be liable

to be impounded under the provisions of by-laws passed by towns under the statute we are considering, as to those which should be impounded for other causes by virtue of our general statutes. (See the *act concerning communities and corporations*, Rev. Stat., tit. 3, ch. 7, §§ 85 to 98 ; also the *act for the regulation of civil actions*, Rev. Stat., tit. 1, ch. 15, § 253.) That statute was passed at a very early period, and was designed to leave it to each town to determine whether and under what regulations the animals mentioned in it should be suffered to go at large within its limits, and, since its enactment, by-laws on that subject, similar in the respect in which the one now before us is claimed to be objectionable, have been passed under it by a very large proportion of our towns, and enforced, so far as our knowledge extends, without objection, excepting in a single case tried many years ago at the circuit, in which the point now made by the plaintiff was overruled, and the decision acquiesced in without any attempt to revise it. If, as a new question, the plaintiff could succeed in raising a doubt as to the power of towns to pass such by-laws, we should deem it too late now to disturb a practical construction of the statute under which they were passed, which has continued so long and been so general and uniform.

The plaintiff claims, in the next place, that this by-law, by a true construction, does not render cattle at large liable to be impounded; but that the provision on the subject of impounding applies only to swine. We think that this is not the just construction of that provision, but that it embraces also cattle and sheep, which had been before prohibited in the by-law from going at large. To confine it to swine only, would not be giving it that reasonable construction which all laws, and especially by-laws, which for obvious reasons are usually more inartificially expressed than others, should receive; while it would be manifestly opposed to the intention of those who passed it. It would also be opposed to the rule, which applies to this species of laws, as well as to all others, that such a construction should be given to them, if possible, that every part of them should

have effect; for if that provision is held applicable to swine only, it would leave the prohibition as to cattle and sheep without any penalty or remedy whatever for its violation, since the next provision, affixing a penalty for the violation of the by-law, must, on the same ground, be held not to apply to those animals, but be restricted to swine only. The repetition of the word "voted," preceding the provision respecting sheep and swine, which is all that gives any color to this ingenious claim of the plaintiff, was, if we impute any sensible meaning to the makers, unnecessary, and did not render the different clauses to which it was prefixed independent in sense, if it indeed did even in form. All those clauses constitute but one by-law. They are so expressly treated in the last provision, which directs how " the foregoing by-law " shall be published, and are therefore to be construed collectively. It has also been justly remarked that the use of the word *creatures*, in the third clause, favors the construction of the defendants.

That part of the charge below, to which the plaintiff also excepts, in regard to the duty of selectmen in procuring pounds, was obviously correct. It is immaterial whether they erect or build a pound, or purchase or hire an enclosure suitable for that purpose already constructed. The vote of the town in this case was of no avail. It is found by the jury that the pound was procured and established, not by the town, but by the selectmen; and it was not less their act because it was done in accordance with the expressed wish of the town.

A new trial should not be granted.

In this opinion the other judges concurred.

New trial not advised.