## THE CITY OF LEAVENWORTH V. WILLIAM BOOTH.

1. CITIES OF FIRST CLASS; *Charter; Power of Council, by Ordinance, to Levy and Collect License-Taxes from Insurance Companies, and Insurance Agents.* The act of the legislature of Kansas of 1870, incorporating cities of the first class, which provides that the mayor and council of such cities shall have power to enact ordinances, "to levy and collect a license-tax on fire or life-insurance companies or agencies, and to impose fines, forfeitures and penalties for the breach of any ordinances," does, by its terms, give to the mayor and council of a city of the first class the power to enact an ordinance which shall provide that every fire or life-insurance company intending to do business in such city shall first obtain a license from the city to do such business, that the price of each license shall be $50 for a fire-insurance company, and $100 for a life-insurance company; and that any person who shall violate such ordinance shall, upon conviction, be fined not less than $50 nor more than $200, etc.

2. INSURANCE DEPARTMENT—*Act Creating, Not in Conflict with City-Charter Act.* Where a city of the first class did, in 1870, in pursuance of such statute, enact such an ordinance as that above mentioned, *held,* that the act of the legislature of 1871, creating the insurance department, did not repeal or modify said statute of 1870, or said ordinance, so as to exempt from the operation of said ordinance that class of foreign corporations doing business in Kansas and in said city, which pays to the superintendent of insurance, under § 17 of the law of 1871, on account of the laws of their own state, an amount greater than that ordinarily paid by other insurance companies.

City of Leavenworth v. Booth.

3. ———— Neither said statute of 1870, nor said ordinance, so far as either has any application to this case, is in violation of section 1 of article 11 of the constitution, which requires that "the legislature shall provide for a uniform and equal rate of assessment and taxation."

4. ———— Neither said statute of 1870, nor said ordinance, so far as either has any application to this case, is in violation of section 4 of article 11 of the constitution, which provides that "No tax shall be levied except in pursuance of a law which shall distinctly state the object of the same," although said ordinance may not distinctly state what shall be done with the money paid by the insurance companies for licenses.

## *Appeal from Leavenworth Criminal Court.*

BOOTH, an agent of a foreign life-insurance company, was prosecuted before the police court for a violation of an ordinance of *The City of Leavenworth* requiring foreign insurance companies to pay certain license-taxes for the privilege of doing business in said city. The action was removed by appeal to the criminal court,\* where a trial was had at the December Term 1874. It was a test case, for the purpose of determining the validity of said city ordinance. The facts were agreed upon, and all those material to the questions decided here, are stated in the opinion, *infra.* The criminal court held the ordinance valid. *Booth* was thereupon found guilty, and fined $50, and costs. He brings the case to this court by appeal, for review.

*Clough & Wheat,* for appellant:

When the Wisconsin Ins. Company for which Booth was agent paid to the state superintendent of insurance, in accordance with the requirements of the statute creating the insurance department, the sum of $325 for the same purpose as required by the Wisconsin laws, (that is, for fines, penalties, licenses, fees, etc.,) such company might, for the year thus paid for, do business in this state without being sub-

---

[ \*THIS court was abolished by ch. 88, Laws of 1875. Said act took effect April 1st, 1875. At that date, all causes pending in said court, and all papers and records of said court, were transferred to the district court.]

jected to any *fine* for so doing. If it could not, then the amount thus paid, is not, in *practical effect,* for fines, penalties, etc.) The city cannot, of course, impose any fine except by virtue of a law of the state authorizing it so to do—and therefore, when, as by § 17 of the insurance law, (page 221, Laws 1871,) certain payments are in certain special cases, as in this, made for fines, penalties, licenses, fees, etc., such payment is made *in lieu* of fines, penalties, licenses and fees, and the city is not authorized in such special case to require a license to be paid for, or to fine, etc. When a city passes or enacts an ordinance which imposes a fine, by virtue of power conferred on it by a state law, it does so by virtue of delegated power, and does so as a part of the law-making power of the state. 2 Dillon on Munic. Corp. § 245, and notes.

The ordinance mentioned in the agreed statement of facts is void, because of article 11 of the constitution of this state, in so far as thereby any tax is attempted to be levied; as the *object* of the tax is not specified, either in the statutes of the state under which said city derives whatever power it has, nor in said *ordinance,* as required by § 4 of article 11 of the constitution. And said ordinance violates the rules of uniformity and equality, specified in § 1 of said article 11. And further, the power to levy and collect a license tax on fire and life insurance companies or agencies, mentioned in the sixth subdivision, on page 99, laws 1870, and in the second subdivision, on page 58, laws 1874, even if valid, does not authorize a tax, properly so called, but only a tax, or fee, reasonable in amount, as a compensation for the trouble of issuing a license. 1 Dillon on Munic. Corp. §§ 291, 292, 293, and notes.

*H. Miles Moore,* city-attorney, for The City:

The council of the city, under and by virtue of the provisions of its charter, which is a general law of the state, has authority to levy and collect a license-tax on fire or life insurance companies, or agencies, etc. In pursuance of that authority the city council did, for the purpose of raising a

revenue to pay the debts of the city for the support of common schools in the city, and under and by virtue of the police regulations of said city, enact the ordinance set forth in the record. The fact that the said company, of which the defendant was agent, had paid to the superintendent of insurance the sum of $325, or any other sum, as license to do business in this state, or even that said sum was in full for license, fines, etc., to the state of Kansas, has nothing to do with the authority given by the same legislature to cities of the first class to pass ordinances levying a license-tax for them to do business within the limits of said city. Under the provisions of the state law of 1871, such insurance companies can do business anywhere in the state, if they comply with that law, outside of the city of Leavenworth; but if they desire to do business in that city, the state law and city ordinance says, they must conform to the local regulations of the city.

The provisions of the ordinance are not in conflict with § 4 of article 11 of the constitution. That provision has reference to state taxes, and not municipal taxes. The ordinance does not violate any provision of the constitution. The provisions in the charter of 1870 and 1874, conferring the authority to levy and collect a license-tax on certain avocations and employments, are constitutional. 1 Dillon, § 291, and note.

The opinion of the court was delivered by

VALENTINE, J.: On March 2d 1870, an act of the legislature of Kansas, amending "an act to incorporate cities of the second class," was passed, which provides among other things, as follows:

"The mayor and council of each city created or controlled by this act, shall have the care, management and control of the city, and its property and finances, and shall have power to enact and ordain any ordinances not repugnant to the constitution and laws of this state, and such ordinances to alter, modify, or repeal, and shall have power * * * to levy and collect a license-tax on * * * fire or life insurance com-

panies, or agencies, * * * and to impose fines, forfeitures, and penalties for the breach of any ordinances," etc.—(Laws of 1870, page 97, et seq.)

On May 21st 1870, the mayor and council of the city of Leavenworth—it being a city of the first class—passed an ordinance which provides, among other things, as follows:

"SEC. 1. No person or persons shall engage in the business of fire or life insurance, nor shall any company do business as a fire or life insurance company, in this city, after the 15th day of June 1870, without first having obtained a license therefor. The price of such license for each and every fire insurance company doing business in this city, shall be fifty dollars per annum; and the price for such license for each and every life insurance company doing business in this city, shall be one hundred dollars per annum."

"SEC. 4. Each and every person or agent who shall violate any of the provisions of this ordinance shall, on conviction before the police judge, be fined not less than fifty dollars, nor more than two hundred dollars, for the first offense, and shall be fined the further sum of fifty dollars for each and every day he shall continue to violate the same."

There is no provision in the ordinance, or elsewhere, prescribing what shall be done with the money received for licenses. On March 1st 1871, an act of the legislature was passed, creating an insurance department, (Laws of 1871, page 214,) and providing for the appointment of a "superintendent of insurance," (§ 2,) and also providing that, "the said superintendent shall have the sole and exclusive charge of and control over said insurance department, under the laws relating thereto;" (§ 3.) Said act also provides that certain things shall be done, and certain moneys shall be paid by each and every insurance company, before it shall have any authority whatever to do business in Kansas. And said act further provides, that—

"Whenever the existing or future laws of any other state or government shall require insurance companies organized under the laws of this state, applying to do business by agencies in such other state or government, or of the agents thereof, any deposit of security in such state for the protection of policyholders therein, or otherwise, or any payment

for taxes, fines, penalties, certificates of authority, licenses, fees, or otherwise, greater than the amount required for such purposes from insurance companies of other states by the then existing laws of this state, then, and in every such case, all companies of such states or governments establishing agencies in this state shall make the same deposit, for a like purpose, with the superintendent of insurance of this state, and pay to said· superintendent, for taxes, fines, penalties, certificates of authority, licenses, fees, or otherwise, an amount equal to the amount of such charges and payments imposed by the laws of such other state or government upon the companies of this state and the agents thereof." (§ 17.)

In February 1874 the Northwestern Mutual Life Insurance Company of the state of Wisconsin applied to the superintendent of insurance of this state for permission to do business in Kansas. The agreed statement of facts upon which this case was tried in the court below shows among other things as follows:

"The laws of said state of Wisconsin in force therein ever since and before the first day of January 1874, require insurance companies organized under the laws of this state (of Kansas,) or of any state other than said state of Wisconsin, applying to do business by agencies in said state of Wisconsin, payment of the sum of $325 in amount, per annum, for taxes, fines, penalties, certificates of authority, licenses, fees for the privilege of·doing business therein, and because thereof; and under and by virtue of § 17 of the act of the legislature of the state of Kansas, entitled 'An act to establish an insurance department in the state of Kansas, and to regulate the companies doing business therein,' approved March 1st 1871, the superintendent of insurance of this state of Kansas did, in the month of February 1874, demand and require of and from the company first aforesaid, that it pay to him said sum of $325 before he would grant authority thereto to transact business in the state of Kansas. And the company first aforesaid then, in February 1874, paid to said superintendent of insurance of this state of Kansas, $325 for taxes, fines, penalties, certificates of authority, licenses, and fees, for the privilege of doing business in this state of Kansas for the term and period of one year from the 28th of February 1874. And thereupon said superintendent of insurance of this state of Kansas authorized and licensed the company first aforesaid to engage in, do, and transact business as such life insurance

company in this state of Kansas for the term and period of one year from and after the time last aforesaid, and to establish agencies in this state and to engage in and do and transact such business in this state by an agent or agents of said company."

On March 6th 1874 the legislature reënacted in substance the provisions of the act of 1870 first quoted in this opinion, without attempting to repeal said provision either directly, or by implication. (Laws of 1874, page 58, § 13.) The defendant William Booth is the duly-authorized agent of said Northwestern Mutual Life Insurance Company, for Kansas; and the company, through him, did business as an insurance company in the city of Leavenworth on the 22d of April 1874, without having obtained from said city any license to do such business. On the 24th of said April the defendant was arrested on the charge of violating said city ordinance, by doing life insurance business as aforesaid for said company, in said city, without having any city license therefor. The case was tried before the police judge of said city. The defendant was found guilty, and fined fifty dollars. He then appealed to the criminal court of Leavenworth county, where he was again tried, found guilty, and fined fifty dollars; and he now appeals to this court.

The only question involved in this case is, whether said city ordinance is valid, as applied to this class of insurance companies, but involved in this question are several others. 1st, Do the provisions of the statute first quoted in this opinion, by its terms authorize the passage of such an ordinance as was passed? That is, does it authorize the passage of an ordinance requiring more to be paid for the insurance license than the mere cost of issuing the license? 2d, If said provision does by its terms authorize the passage of such an ordinance, then was not it, and any ordinance passed under it, so modified by the act of 1871 creating the insurance department, that such provision will no longer apply to this class of insurance companies which pays to the superintendent of insurance, on account of the laws of their own state, a sum

41—15 KAS.

greater than the amount ordinarily paid by the insurance companies in lieu (as is claimed) of all " taxes, fines, penalties, certificates of authority, licenses, fees," etc.? 3d, Is said provision itself valid? Involved in this last question are these other questions: Is said provision in contravention of § 1 of article 11 of the constitution, which requires that "The legislature shall provide for a uniform and equal rate of assessment and taxation?" Is it in contravention of § 4 of article 11 of the constitution, which provides that "No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same?"

We think the said ordinance is valid so far as it has any application to this case. There are many kinds of business, like that of selling intoxicating liquors, for instance, which may, under our constitution, be absolutely prohibited by the legislature, or be licensed, restrained, and regulated. And we know of no good reason why the business of insurance may not come within this category. Many good people believe that the world would be better off without insurance, than with it, and all believe that it may be restrained, regulated, and allowed to exist only under a license. And of the different kinds of business which may be allowed to exist only under a license, there are many whose license-tax may be vastly more than the mere cost or value of issuing the license. And again we could instance the business of selling intoxicating liquors. In granting licenses the items which may be taken into consideration as elements in fixing the costs of the same, would seem to be about as follows: first, the value of the labor and material in merely allowing and issuing the license; second, the value of the benefit of the license to the person obtaining the same; third, the value of the inconvenience and cost to the public in protecting such business, and in permitting it to be carried on in the community; fourth, and in some cases an additional amount imposed as a restraint upon the number of persons who might otherwise engage in the business. None of these items contemplates, except incidentally, the raising of revenue for general purposes. In

many cases a license, which, if issued for proper purposes, would be valid, would not be valid if issued merely for the purpose of obtaining or increasing the general revenue fund. A proper license-tax is not a tax at all, within the meaning of the constitution, or even within the ordinary signification of the word "tax." (*City of East St. Louis v. Wehrung,* 46 Ill. 393; *Addison v. Saulnier,* 19 Cal. 83; *Carter v. Dow,* 16 Wis. 318; *State v. Herod,* 29 Iowa, 123, 125; *Mitchell v. Williams,* 27 Ind. 62.) This is so even where the license-tax is much greater than the mere cost of issuing the license, and even where the surplus fund incidentally arising from the issuing of the license goes into the treasury to swell the general revenue fund. (*Charity Hospital v. Stickney,* 2 La. An. 550; *Tenny v. Lewy,* 16 Wis. 566, 567; *Chilvers v. The People,* 11 Mich. 43; *Ash v. The People,* 11 Mich. 347; *Baker v. The City of Cincinnati,* 11 Ohio St. 534, 543, 544; *Johnson v. Philadelphia,* 60 Penn. St. 445, 450; *Henry v. The State,* 26 Ark. 523, 525; *Orton v. Brown,* 35 Miss. 426.) And there are still other decisions, holding that the constitutional provisions with reference to taxation have no reference to the collection of license-taxes, among which are the following: *Anderson v. The Kerns Draining Co.,* 14 Ind. 201; *Thomasson v. The State,* 15 Ind. 449, 451; *Bright v. McCullough,* 27 Ind. 223, 232; *The People v. Coleman,* 4 Cal. 46. The imposition of a license-tax is in the nature of a sale of a benefit, or privilege, to a party who would not otherwise be entitled to the same. The imposition of an ordinary tax is in the nature of requisition of a contribution from that which the party taxed already rightfully possesses in the state.

But whether the foregoing views are right or wrong, still we think the same conclusion must necessarily be reached from other considerations. It must be remembered that the insurance company involved in this controversy is a foreign insurance company, having no rights in this state except such as the state may see fit to confer upon it. It has no power to do business in Kansas by virtue of its organization in Wisconsin. It has no power to do business in Kansas by

virtue of the laws of Wisconsin, or by virtue of the constitution or laws of the United States, or by virtue of all combined. (*Paul v. Virginia*, 8 Wallace, 168; *Ducat v. Chicago*, 10 Wallace, 410; *Liverpool Insurance Co. v. Massachusetts*, 10 Wallace, 556.) It can do business in Kansas only under the laws of Kansas, and by permission from the state of Kansas. This state might absolutely exclude it, or might require that it do business only under a license, and might require that it not only get a license from the state; but also that it get a license from every city, county, or village in which it should attempt to do business. The state may permit such insurance company to come into the state under just such restraints and regulations as the state may choose. Hence, the state is not bound to permit said insurance company to come to this state, (as individual citizens of other states have a right to do,) and then, for the purpose of raising revenue, resort only to the ordinary modes of taxation. On the contrary, the state, without resorting to taxation at all, may require that such insurance company shall pay for the privilege of coming into the state, and of doing business therein, and may require that it shall not only pay a sum to the state for the privilege of doing business therein, but that it shall also pay a sum to every municipal corporation in the state in which it shall attempt to do business. And all this the state may do without violating any provision of its own constitution. The provisions of the constitution with reference to taxation, have no application whatever to this class of cases. And it would make no difference if these sums, required from foreign insurance companies, were required solely for the purpose of swelling the general revenue fund. That these views are correct, we would refer to the following decisions: *Fire Department of Milwaukee v. Helfenstein*, 16 Wis. 136; *The People v. Thurber*, 13 Ill. 554; *Ducat v. City of Chicago*, 48 Ill. 172; *Slaughter v. Commonwealth*, 13 Grattan, (Va.) 767, 774, et seq. We might refer to other authorities, but do not think that it is necessary.

The said statute of 1870 (Laws of 1870, page 97, et seq.,)

unquestionably authorized the city of Leavenworth to pass said ordinance; and we do not think that either the statute or the ordinance was subsequently repealed or modified by the act of 1871 creating the insurance department. The act of 1871 does not purport to repeal or modify that of 1870, or anything done under it; and the two acts are not necessarily in conflict. Both may stand together. It is a well-settled principle of law, that repeals by implication are not to be favored. The intention of the act of 1871 was, that foreign insurance companies might, by paying a certain sum, be authorized to come into the state for the purpose of doing business therein. The intention of the act of 1870 was, that all insurance companies, domestic as well as foreign, already rightfully in the state, and ready to do business therein as far as the state is concerned, should, if they desired to do business in any particular city, pay to such city a license-tax. In this there is no conflict.

The judgment of the court below is affirmed.

KINGMAN, C. J., concurring.

BREWER, J., not sitting.