[No. 1912.]

## Ex Parte W. E. GREGORY.

1. MUNICIPAL CORPORATIONS — CONSTRUCTION OF ORDINANCES.— See the opinion *in extenso* for an elaborate statement of the general rule of construction applicable to municipal ordinances; which is, in substance, that they should be given a *reasonable construction*,— that is, a construction that will give effect to the intention of the power enacting them; and that, in interpreting them, all reasonable intendments which help to sustain and make them operative are to be indulged and weighed by the court. In harmony with the principle thus stated, our statute (subdiv. 6, article 3138 of the Revised Statutes) provides as follows: "In all interpretations the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy." Upon the same subject, article 9 of the Penal Code provides that, "every law upon the subject of crime shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects."

2. SAME— TAXING POWER.— The ordinance of the city of Galveston of 1875 (caption: "Occupation and License Taxes," section 33, article II, chapter 39, Revised Ordinances of Galveston), levying certain annual taxes upon vehicles, was, in the case of *Ex Parte Gregory*, 1 Texas Ct. App., 753, held invalid, because the tax so levied was an occupation tax for revenue alone, and not a police regulation, and was in excess of the constitutional limit of one-half the State tax upon the same class of subjects. The ordinance under which the proceedings in this case were had is the ordinance adopted by the city council of Galveston, of November 4, 1879, which seeks to remedy the evil arising out of the want of a valid ordinance regulating and licensing vehicles; the general purpose of which is expressed in its title as follows: "An ordinance to regulate and provide for the licensing of all persons and corporations keeping for public or private use or hire, hacks, coaches, carriages, buggies, drays, carts, wagons or other vehicles in the city of Galveston." Section 1 makes unlawful the keeping for private or public use or hire of any vehicle named in section 2, without obtaining a license, giving the bond and paying the license dues prescribed. Section 2 designates the vehicles required to be licensed, prescribes the dues, and the requisites of the bond. It fixes hack license at $8 per annum, and requires the owner to pay the cost of numbering the hack, not to exceed twenty-five cents. Penalty is prescribed by section 29. *Held* that, under the rule of construction above laid down, the validity of the ordinance must be upheld; that there being nothing in the ordinance which requires it to be construed as levying an occupation tax, and it being evident that it was not intended to levy an occupation but a license tax under the police and not the taxing power conferred upon the council by the charter, that intention must be respected in the interpretation of the ordinance, and be supported by every reasonable intendment. See the opinion *in extenso* on the question.

3. SAME.— The regulation embraced in the ordinance is one which pertains strictly to the police and not the taxing power of the corporation, and it was under and by virtue of this police power that the ordinance was enacted, as is made manifest both by the title and body of the ordinance.

The rule is that "the title and the body of the ordinance may be taken together to give it the necessary certainty to sustain it."

4. SAME.— It is an established rule that, "in the interpretation of a statute, though resort may be had to the preamble, it cannot limit or control the express provisions of the statute." Another rule is that "the statement of legislative reasons in the preamble will not affect the validity of the statute." *Held*, that under these rules the recital in the preamble to the ordinance involved in this proceeding, viz.: that one of the purposes of the ordinance is to provide a fund for the improvement of streets, etc., cannot invalidate the ordinance, especially when it plainly appears from the title and body, as well as from the preamble itself, that another and paramount purpose of the ordinance is the better preservation of public order and the enforcement of police regulations concerning vehicles.

5. SAME.— Section 20 of the ordinance in question sets apart the fund arising from licenses of vehicles to the improvement of streets, etc. *Held*, that this disposition of the fund arising from license of vehicles was within the discretionary power of the council, and cannot operate to invalidate the ordinance as to the levy of the license tax, upon the ground that, as this particular fund was not set apart exclusively for the payment of the expenses incurred by the police regulations, therefore there are no such expenses, and that, therefore, the purpose of the tax is for revenue alone, and not for the purpose of police regulation. By fair intendment it must be held that, while the intention was that the expense of enforcing the regulations must be paid by the city, it matters not what fund was so used. Moreover, if section 20 was in conflict with the charter, it would be invalid and inoperative itself, but would not invalidate the other provisions of the ordinance.

6. SAME.— Whether or not a municipal ordinance, when viewed as a police regulation and as levying a license and not an occupation or other tax, is valid, depends upon whether or not the sums demanded are reasonable for the purposes of regulation.

7. SAME —" LICENSE "—" TAX."— With reference to the distinction between the power to license and the power to tax useful trades and employments, the rule is, with respect to the former, right when alone conferred, that it does not, unless such appears to have been the legislative intent, give the authority to prohibit the trade or to use the license as a mode of taxation with a view to revenue; but that reasonable fees for the license and the enforcement of the ordinance may be charged. In this case the grant of power to the municipality of Galveston by its charter is the twofold power to license and to tax. The rule which obtains in such case sustains the constitutionality of such provisions, "unless there is some specific limitation on the authority of the Legislature in this respect." The specific limitation in the Constitution of the State limits the grant of power to a municipality to levy an occupation or other tax for revenue purposes to not more than one-half the tax levied by the State upon the same class of such subjects. This constitutional limitation does not, however, apply to a license tax prescribed incidentally in connection with and to meet the expenses of police regulations; provided such tax is not unreasonably large, so as to be in fact a tax for revenue or a prohibitory device.

8. SAME — CASE APPROVED.— Note the opinion for the approval of the doctrine announced in *Ex Parte Slaren*, 3 Texas Ct. App., 667, to the effect that the constitutional limitation relating to taxation does not affect the power of the Legislature to confer upon a municipal corporation the authority to

regulate the use of vehicles by such regulations as safety and good order may require, and to impose thereon a sufficient tax to meet the legitimate expense of keeping up such police regulations over the subject.

9. Same.— The rule which obtains in this State is, that the amount exacted for a license, as an exercise of police power merely, though such amount is designed for regulation and not for revenue, need not be confined to the expense of issuing it, but a reasonable compensation may be charged for the additional expense of municipal supervision over the particular business or vocation, at the place where it is licensed, which may include the services of officers, and expenses incidental to the faithful enforcement of police supervision.

10. Same.— The rule also applies that when the question as to the reasonableness of a municipal by-law or city ordinance is raised, and it has reference to a subject-matter within the corporate jurisdiction, it will be presumed to be reasonable, unless the contrary appears on the face of the law itself or is established by proper evidence. Under this rule the license fee of $8 imposed upon hacks by the ordinance of the city of Galveston cannot be held unreasonable. See the opinion *in extenso* on the question.

*Habeas Corpus* on original application from Galveston County.

The case is fully disclosed in the agreed statement of facts set out below, and in the opinion of the court. The agreed statement is as follows:

"Counsel for the relator and for the city of Galveston hereby agree upon the following facts to be admitted as proved upon the hearing of this case, to wit:

"That W. E. Gregory is now and has been for a number of years engaged in the occupation of keeping a livery and feed stable, and carriages and buggies, etc., for use in his business, and for hire in the city of Galveston.

"That said Gregory has used and caused to be run in his said business three carriages, four omnibuses, five buggies and one baggage wagon.

"That on the 12th day of January, 1886, he tendered to John A. McCormick, city collector of taxes, the sum of twenty-five cents for each vehicle above named, being the amount prescribed by ordinance as the cost of numbering each of said vehicles.

"That the said Gregory was on the 15th day of January, 1886, arrested by authority of a writ of arrest from the recorder's court of said city, based upon affidavit of Edward Davis, charging him with a breach of city ordinance by "running a vehicle, to wit: a hack, without license," arrested and held in custody by M. M. Jordan, chief of police of said city, until brought before this court in obedience to this writ.

"It is further agreed that the book of Revised Ordinances, com-

piled by E. O'C. McInnerney, are, as far as involved in this case, the proved ordinances of the city of Galveston, and that such parts thereof as may be deemed applicable by the court or by counsel, shall be considered as in evidence in this case.

"It is further agreed that section 4 of chapter 5 of title 3 of said ordinances has been amended to read as follows, to wit:

"AN ORDINANCE amending section four (4), article one (1), chapter (5), of the Revised Ordinances of the city of Galveston.

"Be it ordained by the city council of the city of Galveston:

"Section 1. That the aforesaid section four (4) be so amended as to hereafter read as follows:

"'Section four (4). That all license dues provided for in the preceding sections of this ordinance shall run from the first day of January one year to the first day of January next year; provided that such license dues may be paid at any time during the year for the unexpired portion thereof, upon payment of a proportionate amount of the annual dues, and license shall be issued therefor.'

"Read first time at regular meeting held December 7, 1885."

A motion for rehearing was filed, but was overruled without written opinion.

*Trezevant & Franklin*, for the relator, filed able arguments both upon the submission of the case and the motion for rehearing. They cited the following authorities: Const. of Texas, art. 8, secs. 1 and 2; Charter of Galveston, title 5, sec. 81; Acts 17th Leg., called session, p. 18; Revised Ordinances of Galveston, p. 178; 1 Dillon's Mun. Corp., sec. 357; 42 Iowa, 673; Cooley on Taxation, 396; id., 408; Cooley on Const. Lim., 201, 496, 586, 695; 12 Vroom, 71–81; 13 Vroom, 364; 2 Cushing, 562; 32 N. Y., 261; 33 N. J., 280; 25 Minn., 248; 5 Cowen, 462; 42 N. J., 364; 59 Miss., 385; 20 N. W. Rep., 361; 3 Ala., 137; 30 Ala., 461; 28 La. An., 102; 44 N. J., 118; 1 Texas Ct. App., 753; 3 Texas Ct. App., 662.

*George P. Finlay*, City Attorney of Galveston, *contra*, cited the following authorities:

On construction of ordinances: Dillon on Municipal Corporations, vol. I, sec. 420.

On power to license: City Charter, sections 45, 81; Revised Ordinances, pp. 178–186.

License fees not taxation: *Mulenbach* v. *Commissioners*, 36 Am. Rep., 518 (13 Vroom, N. J., 364); *Van Hook* v. *Selma*, 45 Am. Rep., 85 (70 Ala., 361); *Van Horn* v. *The People*, 41 Am. Rep., 159 (46

Mich., 183); *St. Louis* v. *Woodruff*, 71 Mo., 92; *Gartside* v. *E. St. Louis*, 43 Ill., 47; *Joyce* v. *E. St. Louis*, 77 Ill., 156; *Kitson* v. *Ann Arbor*, 26 Mich., 325; Desty on Taxation, vol. I, p. 303, "Tax on Business;" id., 305, "License Fees;" Desty on Taxation, vol. II, p. 1394, "City License;" id., p. 1399, "Vehicles;" Dillon on Municipal Corp., vol. I, secs. 357–360, 768, and notes; *Mankato* v. *Fowler*, 20 N. W. Rep., 361.

Willson, Judge. W. E. Gregory having been arrested and being in custody of M. M. Jordan, chief of police of the city of Galveston, by virtue of a warrant of arrest issued by the recorder of said city, upon a complaint charging said Gregory with a violation of section 2 of ordinance No. 5 of said city, to wit, charging him with running a hack without license, he applied to this court for the writ of *habeas corpus*, alleging that his restraint was illegal. We at first declined to grant the writ, because, in our opinion, the criminal district court of the counties of Galveston and Harris had jurisdiction to grant the same primarily, and the application had not been presented to the judge of that court. Thereafter the application was presented to the Hon. Gustav Cook, the judge of said court, and he indorsed thereon as follows:

"It appearing that the question involved is one of importance not only to the relator but to the city of Galveston, and as, in case of the discharge of the relator, there would be no such authoritative decision of the question as is much to be desired, I respectfully suggest that the petition be presented to the court of appeals in the first instance. 'This 16th January, 1886.          Gustav Cook,
"Judge Cr. D. C. G. & H. Cos."

Upon a second presentation of the application with the foregoing indorsement thereon to this court, appreciating the force of Judge Cook's suggestions, and believing that it would be for the public good to have the question at once and finally determined, we granted the writ, and have entertained a hearing of the same.

The ordinance in question was approved November 4, 1879, and is entitled "An ordinance to regulate and provide for the licensing of all persons and corporations keeping for public or private use or hire hacks, coaches, carriages, buggies, drays, carts, wagons or other vehicles in the city of Galveston." This ordinance appears in the Revised Ordinances of the city of Galveston, adopted October 12, 1883, as chapter V, article I, with the caption "Hacks, Drays and other Vehicles." Its provisions are preceded by a preamble as follows: "Whereas it is deemed necessary for the better preservation

of public order, and enforcement of police regulations, and for the purpose of providing funds for making necessary improvements upon the streets, alleys and avenues of the city; therefore be it ordained," etc.

Section 1 of this ordinance makes it unlawful for any person, firm or corporation to run or keep for public or private use or hire any of the vehicles named in section 2, without having first obtained a license therefor, and given a bond, and paid the license dues prescribed by said ordinance.

Section 2 designates the vehicles required to be licensed, and prescribes the license dues, the requisites of the license and bond, etc. It fixes the license dues upon a hack at the sum of $8 annually, and fixes said dues upon other vehicles at different sums, ranging from $2.50 to $12. It also requires the owner of the vehicle to pay the cost of numbering the same, not to exceed twenty-five cents. The penalty for a violation of the preceding sections is prescribed by section 29, and is a fine of not less than five nor more than one hundred dollars.

Section 20 provides that all license dues collected under the ordinance, after retaining sufficient amounts to pay the expenses of issuing said licenses and keeping a record thereof, shall be paid into the city treasury, and shall not be used for any other purpose than the improvement of the streets, alleys and avenues of the city.

Section 21 provides that all fines and penalties collected under the provisions of the ordinance shall be used exclusively for the maintenance of the police department.

This ordinance contains thirty sections, and regulates in detail and fully the keeping and running of the vehicles therein specified. It prescribes various fines and penalties for the violation of these regulations, and prescribes the mode of procedure for the enforcement of such regulations.

Authority for the enactment of this ordinance is claimed to be derived from two provisions contained in the charter of the city of Galveston. One of these provisions is section 45, article 1, title IV, and is as follows: "To license, tax and regulate hackmen, draymen, omnibus drivers, and drivers of baggage wagons, porters and all others pursuing like occupations, with or without vehicles, and prescribe their compensation, and provide for their protection, and make it a misdemeanor for any person to attempt to defraud them of any legal charge for services rendered, and to regulate, license and restrain runners for steamboats, railroads, stages and public houses."

The other provision is section 81, art. 3, title V, and is as follows: "The city council shall have power to levy and collect occupation taxes both upon natural persons and upon corporations doing any business in said city, and to impose and collect license taxes upon both natural persons and corporations keeping for public or private use hacks, coaches, carriages, buggies, drays, carts, wagons, street railroad cars, or other vehicles employed in said city, or carrying on therein any business the regulation or restraint of which may be necessary and proper to preserve public order or enforce police regulations, and may require such occupation and license taxes to be paid in advance by such persons and corporations before carrying on such business or keeping such vehicles as aforesaid, and by suitable penalties punish the violation or evasion of any ordinance or ordinances adopted in pursuance of this section; *provided, however*, that all such taxes shall be equal and uniform upon the same class of subjects; *provided, further*, that a separate license shall be taken out for each establishment, occupation, avocation, business, calling or vehicle; *and, provided further*, that no occupation taxes levied by the city shall exceed, in any one year, one-half the amount levied by the State on the same subject for the same period."

It is contended by the applicant that section 2 of the ordinance is not authorized by, but is in violation of, the foregoing provisions of the charter, in so far as the same levies the taxes therein specified, except the twenty-five cents for cost of numbering a vehicle. Also, that to the same extent it is in violation of sections 1 and 2 of article 8 of the Constitution of this State. The position assumed by the applicant is, that the taxes levied by said section 2 of the ordinance, while the same are therein denominated "license dues," are in fact *occupation taxes*, and, being in excess of one-half the occupation tax imposed by the State upon the same class of subjects, are illegal. That the sums thus levied, under the name of "license dues," are not levied for the purpose of *regulation* but for the purpose of *revenue*. That the ordinance upon its face shows that such is its purpose. That not only is the purpose of the ordinance to thus provide a revenue, but a revenue for a particular expense other than the expense of licensing, that is, for the improvement of the streets, alleys and avenues of the city, which particular expense has been otherwise specially provided for by the charter of the city, sections 127 and 128 of title 10.

It must be conceded, under the authority of *Ex Parte Gregory*, 1 Texas Ct. App., 753, and *Ex Parte Slaren*, 3 Texas Ct. App., 662, that if the sums levied by the ordinance as license dues are in fact

occupation taxes, the levy is in violation of not only the city charter but of the State Constitution. Denominating these sums "license dues" will not of itself make them such if it clearly appears that they are in fact occupation taxes. We must regard the substance and purpose of the ordinance in construing it, rather than its form and language.

In the construction of ordinances, in considering the question of their validity, Mr. Dillon says: "The courts will give them a *reasonable construction*, and will incline to sustain rather than to overthrow them, and especially is this so where the question depends upon their being reasonable or otherwise. Thus, if by one construction an ordinance will be valid, and by another void, the courts will, if possible, adopt the former." (1 Dillon, Munic. Corp. (3d ed.), sec. 420.) "When the Legislature has conferred full and exclusive jurisdiction on a municipal corporation over a certain subject, the acts of the corporation will be supported by every fair intendment and presumption." (*Baltimore* v. *Clunit*, 23 Md., 449.) "In view of the inartificial character of town by-laws, they are especially entitled to a reasonable construction." (*Whitlock* v. *West*, 26 Conn., 406.) "The strict rules by which the validity of penal statutes are to be tested are not to be applied to the by-laws or ordinances of municipal corporations. It has been well remarked that the by-laws of very few of these corporations could stand such a test. They should receive a reasonable construction, and their terms must not be strictly scrutinized for the purpose of making them void." (*Municipality* v. *Cutting*, 4 La. Ann., 335; *Merriam* v. *New Orleans*, 14 id., 318.)

It is provided in our statute that "in all interpretations the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil, and the remedy." (Rev. Stats., art. 3138, subdiv. 6.) And our Penal Code provides that "every law upon the subject of crime shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects." (Penal Code, art. 9.) It will be perceived from the provisions of our statute above quoted, that they are in accord with the rules of construction applicable to ordinances. They contemplate a *reasonable construction*, that is, a construction which will give effect to the *intention* of the legislative power enacting the law, and in interpreting the law all reasonable intendments which help to sustain and make the law operative are to be indulged and weighed by the court.

Keeping in view these rules of construction, we will first inquire as to the old law, the evil, and the remedy, with reference to the subject-matter of the ordinance in question. The old law is found in the Revised Ordinances of the city of Galveston, adopted in 1875, chapter 39, article II, caption: "Occupation or License Taxes," page 268. Section 33 of that ordinance levies certain annual taxes upon vehicles, which taxes are in excess of one-half the taxes levied by the State upon the same class of subjects. This old ordinance evidently levies these taxes as occupation taxes, for the purpose alone of providing revenue, and has no reference whatever to the regulation of the occupations taxed. In *Ex Parte Gregory*, decided by this court in 1877, the validity of the old ordinance was brought in question, and this court held that the tax levied upon a hack by that ordinance was an occupation tax, and, being more than one-half the State tax upon such occupation, was illegal, and in respect to said tax that said ordinance was void.

In discussing the power of the city under its charter to levy a license tax, the court in that case, referring to the latter portion of section 3, article 3 of title 5 of the city charter, says: "This portion is believed to authorize the city council to regulate the manner of using these vehicles, and could not properly be called an occupation tax, for it applies as well to vehicles used for private use as to those kept for the use of the public; and, inasmuch as it is elsewhere provided for taxing these articles as personal property, it can hardly be supposed that the Legislature intended to burden the citizen further than as might be necessary to provide for the systematic control and management of this kind of property, with reference to the safety and good order of the public, and incidentally to demand the payment of a sum from each owner to meet the necessary expenses of this regulation." (*Ex Parte Gregory*, 1 Texas Ct. App., 753.)

This decision virtually annulled the old ordinance with respect to the tax upon vehicles, and left the city without any law or regulation upon the subject. The want of a valid ordinance regulating this subject was the evil which the city council sought to remedy by the ordinance adopted November 4, 1879,— the ordinance the validity of which is brought in question for the first time in this case.

It must be presumed that in framing and enacting this ordinance the council acted with a knowledge of the Constitution of the State, of the city charter, and of the decision of this court in the Gregory case. It must be presumed that the council intended to conform said ordinance to the requirements of those authorities, so as to

make it a valid and effective ordinance. This intent on the part of the council, to avoid the objections which obtained against the former ordinance, and to bring the present ordinance within the limits of legitimate legislation, is quite manifest not only from the circumstances under which the new ordinance was framed and enacted, but also from the title, subject-matter, provisions and language of the ordinance itself. Evidently it was not intended by this ordinance to levy an *occupation* but a *license tax*, under the *police* and not the *taxing* power conferred upon the council by the charter. Such being the intention of those who framed and adopted the ordinance, that intention must be respected and considered in its interpretration, and every reasonable intendment must be indulged, in furtherance of the accomplishment of such intention.

In our judgment there is nothing in the ordinance which requires it to be construed as levying an occupation tax. The general purpose of the ordinance is that expressed in its title, that is, " to regulate and provide for the licensing of all persons, etc., keeping for public or private use or hire hacks, coaches," etc. Such regulations pertain strictly to the police and not the taxing power of the corporation, and it was under and by virtue of this police power that the council enacted this ordinance, as is evidenced by the title and body of the ordinance. " The title and the body of the ordinance may be taken together to give it the necessary certainty to sustain it." (*Martindale* v. *Palmer*, 52 Ind., 411.)

It is urged by counsel for applicant, however, that the recital in the preamble of the ordinance, that it was enacted " for the purpose of providing funds for making necessary improvements upon the streets, alleys and avenues of the city," conclusively shows that the ordinance is not a police regulation, but is a measure of taxation to raise revenue, and is, in effect, the levy of an occupation tax. Also, that this construction of the ordinance is borne out by section 20 thereof, which appropriates the principal portion of the license dues collected to the improvement of the streets, alleys and avenues of the city. This argument is not only plausible, but it is forcible and apparently sound. We think, however, it can be reasonably answered, so as to sustain, in this respect, the validity of the ordinance. With regard to the recital in the preamble, above quoted, it is to be noted that the purpose therein stated is not the only purpose of the ordinance, as shown not only by said preamble but by the body of the ordinance. A further purpose is stated in said preamble to be " for the better preservation of public order and enforcement of police regulations," and this appears from the pro-

visions of the ordinance to be the leading, primary and principal purpose for which the ordinance was enacted.

In the interpretation of a statute, though resort may be had to the preamble, it cannot limit or control the express provisions of the statute. (Dwarris on Stats., 504–508.) And the statement of legislative reasons in the preamble will not affect the validity of the statute. (42 Conn., 583.) We are of the opinion, therefore, that the recital in the preamble to the ordinance, that one of the purposes of the ordinance is to provide a fund for the improvement of streets, etc., cannot be used to invalidate the ordinance, especially when it plainly appears from the title and body of such ordinance, and also from the preamble, that another and paramount purpose of the ordinance is, the better preservation of public order and the enforcement of public regulations concerning vehicles. The purpose of providing a fund is manifestly a secondary, incidental one to that of regulating the subject of vehicles, and must be subordinated to the primary and leading purpose, which is one of police regulation.

With regard to section 20, which sets apart the fund arising from the imposition of the license tax upon vehicles for the improvement of streets, etc., we do not think it can be held to invalidate the ordinance prescribing such license tax. A reasonable interpretation of this would be that, while the expense of enforcing the regulations in regard to vehicles must be paid, it should be paid out of some other fund instead of this particular one, and the appropriation of this particular fund to another purpose would in no way relieve the city from the expense, or any portion thereof, of enforcing the regulations. In other words, the expense of enforcing the regulations must be paid for by the city, and it matters not out of what fund the same is paid. This was a matter within the discretion of the council, and cannot in any way, we think, affect the validity of the ordinance as to the levy of the license tax. It by no means follows that, because this particular fund was not set apart exclusively for the payment of the expenses incurred by the police regulations, therefore there are no such expenses, and that therefore the purpose of the tax is for revenue alone, and not for the purpose of police regulation. And section 20, if in conflict with the charter, would be invalid and inoperative, but that fact would not invalidate the other provisions of the ordinance.

These being our views of the intent and purpose of the ordinance in question, we hold that the sums levied thereby, if they be reasonable, are license taxes, levied under and by virtue of the police

power of the city council, and are not occupation or other taxes controlled by the limitations of the Constitution of the State, and the charter of the city, with reference to taxation. (15 Kan., 627; 14 Ind., 201; 27 Ind., 223; 4 Cal., 46.)

Therefore it only remains to be considered and determined whether the ordinance, when viewed as a police regulation, and as levying a license, and not an occupation or other tax, is valid. The solution of this question depends upon whether or not the sums demanded are reasonable for the purposes of regulation. It is here to be observed that section 81 of the city charter confers the power not only to regulate the keeping and use of vehicles, but also to impose and collect license taxes thereon.

In treating upon this subject Mr. Dillon says: "Concerning useful trades and employments, a distinction is to be observed between the power to 'license' and the power to 'tax.' In such cases the former right, unless such appears to have been the legislative intent, does not give the authority to prohibit, or to use the license as a mode of taxation with a view to revenue, but a reasonable fee for the license and the labor attending its issue may be charged." (1 Dillon, Munic. Corp. (3d ed.), § 357.) The author is speaking with reference to a grant of the power to *license,* and not of a grant of the twofold power to *license* and *tax,* which twofold power, as we have seen, has been conferred upon the municipality of Galveston by its charter. In the previous portion of the section quoted, the author remarks that when the power conferred in the charter is both to license and tax, "unless there is some specific limitation on the authority of the Legislature in this respect, such provisions are constitutional." In this State there is a specific constitutional limitation which, we think, would limit the grant of power to a municipality to levy an occupation or other tax for revenue purposes greater than one-half the tax levied by the State upon the same class of such subjects. But, as we have before stated, this constitutional limitation does not, we think, apply to a license tax prescribed incidentally in connection with and to meet the expenses of police regulations, provided such tax is not unreasonably large so as to be in fact a tax for revenue. This is the view expressed by this court in *Ex Parte Slaren,* 3 Texas Ct. App., 667. It is there held that the constitutional limitation relating to taxation does not affect the power of the Legislature to confer upon a municipal corporation the authority to regulate the use of vehicles by such regulations as safety and good order may require, and to impose a sufficient amount of tax to meet the legitimate expense of keeping up such

police regulations over the subject. In Slaren's case, as in *Ex Parte Gregory*, before cited, the ordinance involved levied an occupation tax in excess of the constitutional and charter limitation, and was held invalid for that reason.

Mr. Desty, in his work on Taxation, states that "License fees are not taxes, but prices paid for the privilege of exercising a franchise. It is a tax only when revenue is the main purpose for which they are imposed." (1 Desty, Tax., p. 305.)

In *The City of Mankato* v. *Fowler*, 20 N. W. Rep., 361, it is said that the fact that the city derives a revenue incidentally from the reasonable exercise of the police power in regulating and controlling the business is no serious objection to an ordinance. "What is a reasonable license fee must depend largely upon the sound discretion of the city council, having reference to all the circumstances and necessities of the case. The general rule is that a reasonable license fee should be intended to cover the expense of issuing it, the services of officers, and other expenses directly or indirectly imposed. Unless, however, the amount is manifestly unreasonable in view of its purpose as a regulation, the court will not adjudge it a tax." The court cites, in support of its views, *City of St. Paul* v. *Colton*, 12 Minn., 50; 2 Am. & Eng. Corp. Cases, 29; *Van Hook* v. *Selma*, 70 Ala., 362; *Van Baalen* v. *The People*, 40 Mich., 258, and 36 Am. Rep., 522, note.

The case of *Van Hook* v. *Selma, supra*, involved the validity of an ordinance which exacted a license fee of $10 of all persons selling goods, wares and merchandise. The opinion in that case, delivered by Justice Somerville, is a clear and exhaustive one, and evidences mature and careful consideration. After citing and reviewing numerous authorities, the court sums up its conclusions as follows: "We declare the true rule to be, in the case of useful trades and employments, and *a fortiori* in other cases, that, as an exercise of police power merely, the amount exacted for a license, though designed for regulation and not for revenue, is not to be confined to the expense of issuing it; but that a reasonable compensation may be charged for the additional expense of municipal supervision over the particular business or vocation, at the place where it is licensed. For this purpose the services of officers may be required, and incidental expenses may be otherwise incurred in the faithful enforcement of such police inspection or superintendence. The rule further applies here, that when the question as to the reasonableness of a municipal by-law or city ordinance is raised, and it has reference to a subject-matter within the corporate jurisdiction, it will be pre-

sumed to be reasonable, unless the contrary appears on the face of the law itself, or is established by proper evidence." And the court held that under these principles it could not judicially know that the license fee of $10 was unreasonable, but that the contrary was presumptively true, and the ordinance was valid. It is conceded in the opinion that there are authorities holding that if the sum required for such license exceeds the expense of issuing it, the act transcends the licensing power, and imposes a tax; at least, in the case of useful trades and employments. But these conflicting authorities are not regarded by the court, in its opinion, as declaring the true rule upon the subject. In our opinion the correct rule is that adopted in this Alabama case, and is supported by the weight of modern American decisions. (See *Van Horn* v. *The People*, 46 Mich., 183; *S. C.*, 41 Am. Rep., 159; *St. Louis* v. *Woodruff*, 71 Mo., 92; *Gartside* v. *East St. Louis*, 43 Ill., 47; *Kitson* v. *Ann Arbor*, 26 Mich., 324.)

In treating upon the subject of license fees Mr. Cooley says: "When the grant" (of power) "is not made for revenue, but for regulation merely, a much narrower construction is to be applied" than where it confers the power also of raising revenue. But even where it is for regulation merely, "a fee for the license may still be exacted; but it must be such a fee only as will legitimately assist in the regulation; and it should not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business which it covers. . . . But the limitation of the license fee to the necessary expenses will still leave a considerable field for the exercise of discretion, when the amount of the fee is to be determined. . . . In fixing upon the fee it is proper and reasonable to take into account, not the expense merely of direct regulation, but all the incidental consequences that may be likely to subject the public to cost in consequence of the business licensed. In some cases the incidental consequences are much the most important, and indeed are what are principally had in view when the fee is decided upon. . . . And all reasonable intendments must favor the fairness and justice of the fee thus fixed; it will not be held excessive unless it is manifestly something more than a fee for regulation." (Cooley on Taxation, pp. 408, 409, 410.) The doctrine thus announced by this great jurist and author is the same declared by the court in *Van Hook* v. *Selma*, *supra*, to be the correct rule.

With regard to the reasonableness of the license fee of $8 imposed by the ordinance under consideration, we cannot say that it is excessive or unreasonable. There is nothing in the ordinance itself

which shows it to be unreasonable, and there is no evidence to support such a conclusion. Looking to the provisions of the ordinance, we find that it provides numerous regulations, the enforcement of which must necessarily demand the constant services of the police of the city, as well as the careful attention and supervision of the municipal officers and government. Considering not only the direct but the probable incidental expense of a proper enforcement of the regulations prescribed by the ordinance, it certainly does not appear that the license fees exacted are anything more than fees for regulation.

Our conclusion and judgment are that the ordinance in question is valid; that the applicant is not illegally restrained of his liberty, and that he be remanded to the custody of the respondent, M. M. Jordan, chief of police of the city of Galveston, and that he pay all costs of this proceeding, for which execution may issue.

We deem it due to counsel in this case to say that we have been greatly aided and enlightened, in our consideration of the questions involved and decided, by their oral arguments and exhaustive citations of authorities. Their thorough investigation of the authorities has relieved us of much labor, and has greatly facilitated our decision. Counsel for applicant cited numerous authorities, in support of their positions, which we have not mentioned in this opinion. Some of these authorities we do not regard as conflicting with the views we have expressed, when considered with reference to the facts upon which they are based. Others of them are in conflict with our views, and in conflict, we think, with the weight of authority.

*Ordered accordingly.*

[Opinion delivered January 30, 1886.]