Samuels, J.
Franklin Slaughter was presented by the grand jury in the Corporation court of Fredericksburg, for having opened and kept (within the jurisdiction of that court) an office, and transacting business as agent, without a license therefor, of the Protection insurance company of Hartford, incorporated and au *769 thorized by the state of Connecticut. Issue was made up on the plea of not guilty, and a trial had, upon which the facts alleged in the presentment were proved, and the further fact that the members of the company are citizens of Connecticut. A verdict was found for the commonwealth assessing the fine at forty dollars. Several motions were made by the plaintiff in error for a new trial, and. in arrest of judgment. These motions were severally overruled and judgment rendered on the verdict. The record was carried by writ of error to the Circuit court of Spotsylvania, by which court the judgment of the Corporation court was affirmed. The record is brought here by writ of error to the judgment of the Circuit court.
Whether the presentment should have been adjudged sufficient upon a demurrer, it is not material here to enquire, as the demurrer filed when the plaintiff in error first appeared, was afterwards withdrawn. After verdict a motion in arrest of judgment for defects in the presentment, can be sustained only in case it be so uncertain that judgment “ according to the very right of the case,” cannot be given thereon. Although there is no distinct averment in the presentment that the Protection insurance company is an insurance company, and we are left to infer the fact that it is such from its name, yet the offense is “ charged therein witli sufficient certainty for judgment to be given thereon according to the very right of the case.” The defect in the presentment, if it be a defect, is cured by the verdict; and the motion in arrest of judgment for this defect could not be sustained. Code of Virginia, ch. 207, § 12, p. 770.
The question made in the Circuit court and in this court in regard to the constitutionality of the statute, Code of Virginia, ch. 38, § 25, p. 210, under which this prosecution is had, is presented by the motion for a new trial, and that in arrest of judgment. It is in *770 sisted that the judgment should be reversed, for that the plaintiff in error was merely an agent for the Protection insurance company of Hartford, incorporated or authorized by the law of the state of Connecticut; that the individual corporators of that company are citizens of that state; that as such citizens, under the constitution of the United States, article 4, § 2, clause 1, they are “ entitled to all privileges and immunities of citizens in the several states;” that in a case like this they have the privileges and immunities of citizens of Virginia: that as citizens of Virginia have the privilege to make- contracts in Virginia for the insurance of others, with an immunity from taxation for making such contracts, that these citizens of Connecticut have the same privilege and immunity; and that the statute above cited, imposing terms upon the agents and subagents of the company, which are not imposed upon citizens of Virginia, is a violation of that portion of the federal constitution above cited.
It is somewhat difficult to perceive how the plaintiff in error can raise this question in his case. He points out no discrimination between his privileges and immunities and those of all other citizens of Virginia engaged in his pursuit. It is not shown that he. is a citizen of a state other than Virginia; the restrictions prescribed by the statute are imposed alike upon all in his condition. The defense, however, is not founded upon any alleged violation of the plaintiff’s personal privileges or immunities, nor upon any violation of privileges and immunities pertaining to his immediate principal, the Protection insurance ■ company of Hartford; but upon an alleged violation of privileges and immunities guaranteed to those citizens of Connecticut, the corporators in that company.
This defense has its basis upon an error in confounding things, which are essentially different, in holding these individual citizens, with their privileges and im *771 munities as such, to be identical with the company in which they are corporators. The privileges and immunities guaranteed to them are annexed to their status of citizenship. They are personal, and may not be assigned or imparted by them, or any of them, to any other person, natural or artificial. If it were otherwise, and these citizens could impart their right to others, the limitation of the guaranty to “ citizens” would be without practical effect; the right might be imparted to classes, and for purposes in contravention of our policy and laws; and thus our welfare or even our safety be endangered.
It must be conceded by all, that these citizens of Connecticut can have no greater “ privileges and immunities” than those which an equal number of our own citizens might enjoy. It must be further conceded by every one in Virginia, that fifty or a hundred (whatever number) citizens of Virginia could not without a charter associate themselves together, and usurp the franchise of a corporation; adopt a corporate name or seal; nor establish a perpetual succession, nor exempt their members from personal liability for contracts of the association; nor to any extent affect or repeal the laws regulating the succession to property, real or personal. In fine, it must be conceded, that our citizens, in any number, of their own motion, and in virtue of their mere citizenship, could do no corporate act whatever. Regarding citizens of Connecticut and of Virginia respectively as having equal privileges and immunities in this respect, we must hold that mere citizenship in Connecticut confers no corporate franchise in Virginia.
It is said however, in effect, that the charter in Connecticut confers the corporate existence, and also the faculty of trading as a corporation; and that the federal constitution guarantees to the corporators the right to trade in Virginia as our own citizens may *772 trade. The reply is obvious, that we do not recognize the authority of Connecticut to confer on her own citizens privileges or immunities in Virginia, which we have not given to our own citizens within the state. Our own citizens, without a charter from our own authorities, can do no corporate act within the state. Those of Connecticut can be in no better position. The general assembly of Virginia alone has authority to say how far the general rules of property and the general law of liability for contracts shall be varied in favor of corporations. They have heretofore, by general laws and by private acts of incorporation, exercised that power, and will, without doubt, continue to exercise it with reference to the welfare of our own people exclusively. They have not (if they could) conferred on another state unlimited discretion to charter companies to -transact business in Virginia. It is a grave exercise of sovereign power to create artificial persons in our midst not amenable to our laws; to vary the general laws by conferring corporate existence, capacity and power. The authorities of Connecticut could not confer such faculties and functions on citizens of Virginia, to be exercised in Virginia; by parity of reason, if no more, they cannot confer them on citizens of Connecticut, to be exercised here. The plaintiff’s theory rests upon the assumption that because private individuals may engage in particular pursuits, that therefore artificial persons called corporations, created and existing elsewhere, may engage in the same pursuits; that the right to exercise their natural faculties in lawful pursuits, is identical with the right to engage in the same pursuits with the aid of a new organization with other and different faculties from those pertaining to the same individuals.
If we carry out the pretensions of the plaintiff to their legitimate results, we must hold that the autho *773 rity of another state may create a corporation within that state, but to use its corporate power within this state in any pursuit permitted to our own citizens: and that the only mode by which we can expel the intruder will be to forbid our own citizens to engage in that pursuit.
It seems to me that the chain of reasoning, by which corporate powers beyond the limits of the state conferring them are to be deduced from private individual rights of citizens, is utterly defective. I have no doubt of the power of the general assembly of Virginia to forbid foreign corporations from engaging in any pursuit within the state; and, of consequence, to grant permission to engage therein only upon terms; and that the statute, Code of Virginia, ch. 38, $ 25, p. 210, is clearly within the scope of their legitimate powers.
The question as to the nature and extent of the privileges and immunities secured to citizens of the several states by the federal constitution, has from time to time been the subject of consideration in the federal and state courts. In several of the cases the claim to privilege and immunity was asserted under circumstances very like those of our case; but in no one of them was the claim allowed. In the cases of The Commonwealth v. Milton, and City of Lexington, v. Same, 12 B. Monr. R. 212, the Court of appeals of Kentucky decided that a statute of that state imposing a tax upon insurance companies chartered in other states but doing business in Kentucky, was valid, although insurance companies chartered in Kentucky were not subjected to the same tax. In these cases the defendant relied upon the federal constitution, article 4, § 2, as does the plaintiff in our case; yet upon full consideration, it was held that the legislatui’e have authority to enact the statute.
In Tatem v. Wright el al. 3 Zabriskie’s R. 429, the *774 Supreme court of New Jersey affirmed the validity of a statute imposing a tax upon the agents of foreign insurance companies from other states doing business in New Jersey. They overruled the claim of privilege and immunity founded on the section of the federal constitution above cited; and they decided that a corporation aggregate was not a citizen, or entitled to the privileges of a citizen, except perhaps for the purpose of giving jurisdiction to the federal courts.
In Corfield v. Coryell, 4 Wash. C. C. R. 371, the subject was under consideration; and the opinion of the court, pronounced by Judge Washington, contains an enumeration of the privileges and immunities secured by the federal constitution, but the franchise of corporation is not embraced therein. In Virginia they may be regarded as set forth in our bill of rights and constitution.
In the Bank of Augusta v. Earle, 13 Peters’ R. 519, the question was argued, and the right of the bank, a corporation chartered in Georgia, to make a contract in the line of its business, in Alabama, was affirmed. It was so held, because the comity of the state of Alabama permitted the contract to be made within her borders. If there had been a statute in that state forbidding the bank to do business within that state, or allowing it to do so only upon terms, the Supreme court would have given full effect to such statute.
It is not necessary in the case before us to express any opinion on the conflict between the decision of this court in Bank of Marietta v. Pindall, 2 Rand. 465, and that of the Supíneme court in the Bank of Augusta v. Earle. The principle of either case seems to require the affirmance of the judgment.
The plaintiff’s counsel, in the argument here, alleged that the statute is in violation of the constitution of Virginia; that as the constitution, article 4, clause 22, *775 prescribes that “taxation shall be equal and uniform throughout the commonwealth, and all property, other than slaves, shall be taxed in proportion to its value, which shall be ascertained in such manner as may be prescribed by lawand as clause 25 of the 4th article authorizes the general assembly to levy a tax on “incomes, salaries and licenses,” that such tax must also be “ equal and uniform.”
The provisions of the 22d and 23d clauses were inserted with the intention of preventing onerous taxes upon slaves. As that species of property was chiefly held in the eastern portion of the commonwealth, and as the power of laying taxes would in a short time pass into the hands of the western portion, it was foreseen that the western portion, if the tax laying power should not be restricted, might discriminate in the levy of taxes to the prejudice of the owners of slaves. These clauses were therefore inserted in the constitution as a compromise, a guaranty for such equality of taxation as therein prescribed. A tax on the value of all property, other than slaves; as to slaves a tax equal to and not exceeding the tax assessed on three hundred dollars worth of land was imposed on every one over the age of twelve years. The provisions of the clauses, taken in connection with the history of the times, leave no doubt that they were inserted as an adjustment of the supposed antagonism of eastern and western interests. The language, however, is broad enough to embrace all subjects of assessable value except slaves, and such is the construction put upon it by the general assembly. It is proposed, however, in the argument here, to extend the equality and uniformity prescribed by clause 22 to the subjects of taxation enumerated in clause 25. If it be conceded for the purposes of this case, that the rule of uniformity and equality must apply to both classes of subjects, yet it can only be so applied as far as practb *776 cable; property of assessable value may readily be brought under the rule; so of incomes and salaries; • but the very large class of licenses, whence is derived a large revenue, cannot be assessed; licenses are necessarily obtained before engaging in the licensed pursuit ; "it would be idle to speculate in advance as to the value of the privilege. To fix arbitrarily a specific tax for all licenses would be grossly unequal and far from uniform ; to tax the merchant who may have fifty thousand dollars profitably invested in his business, and an inn keeper with a tenth part of that capital paying poorly in his business, the same specific sum, would be against the true meaning of the constitution. The requisitions of the constitution may be carried out by a uniform tax on. licenses to persons following the same pursuit, under the same conditions and circumstances; a difference therein will justify a discrimination in the tax. The case before us is an apt instance of business pursued under a difference of circumstances, to justify such discrimination. Our domestic insurance companies are taxed upon their capital, or upon their dividends; a license tax cannot therefore be exacted of them. Constitution of Virginia, art. 4, clause 25. The Protection insurance company of Hartford is not and cannot be taxed upon its capital or dividends, they being beyond the reach of our laws. Our insurance companies are exempt from license tax because, and only because they pay a large tax in a different mode. The Protection insurance company of Hartford, insisting on equality and uniformity, claims an exemption from the license tax, although it does not pay that other tax in that other form, or any other tax whatever. Holding then that the general assembly of Virginia had authority to enact the statute, Code of Virginia, ch. 38, § 25, p. 210, I am of opinion that the defense founded upon its alleged unconstitutionality, is without merit.
*777 As I have said in regard to the other branch of the defense, I may say in regard to this, that it is difficult to perceive how the plaintiff can make it in his case; there is no discrimination against him; he and all others in his business are subjected to precisely the same tax; he must be understood as maintaining the rights claimed for his principal.
I am of opinion to affirm the judgment.
The other judges concurred in the opinion of Samuels, J.
Judgment affirmed*