CHRISTIAN, J.
The act of the general assembly whose constitutionality is drawn in question in this case, is the 104th section of chapter 240, Sess. Acts 1874, which is’in the following words:
“Section 104. On every license to a merchant or mercantile firm the tax to be paid shall be graduated as follows: If the amount of purchases shall not exceed two thousand dollars, the specific tax shall be ten dollars; and for all purchases over two thousand dollars and less than sixty thousand dollars, there shall be paid a tax of one-half of one per centum. Upon all purchases over sixty thousand dollars and less than eighty thousand dollars, there shall be paid a tax of forty cents on the one hundred dollars of said purchases in excess of sixty thousand dollars. Upon all purchases over eighty thousand dollars and less than one hundred thousand dollars, there shall be paid a tax of thirty cents on the one hundred dollars of said purchases in excess of eighty thousand dollars. Upon all purchases over one hundred thousand dollars there shall be paid a tax of ten cents on the one hundred dollars of said purchases in excess of one hundred thousand dollars. The tax imposed under and by virtue of this section shall be in lieu of all tax for state purposes on the capital actually employed by said merchant or mercantile firm in said business. The tax in excess of ten dollars imposed by this section shall be paid in equal instalments on the 10th of January, 10th. of April, 10th of July and 10th of October, in each year, and shall be collected in the same manner that license taxes are collected. Merchant tailors, lumber merchants, dealers in coal, ice or wood, shall be embraced *in this section. But this section shall not authorize any such person to sell wine, ardent spirits, or a mixture thereof.”
We are now to enquire whether this act of the general assembly is invalidated by the constitution of the state; or, in other words, whether there is anything in the provisions of the constitution which, either expressly or by clear implication, forbids the legislature from imposing a license tax on merchants. We say expressly or by clear implication, for the rule which governs the court in cases like this is, that we can declare an act of the general assembl3r void only when such act clearly and plainly violates the constitution, and in such manner as to leave no doubt or hesitation on our minds.
This rule has been repeatedly declared by this court.
Where a plain and palpable infraction of constitutional provision is shown in a law, upon the validity which it is called upon to decide, it is, of course, one of the highest and most solemn duties of the court to declare such law to be inoperative and void. If, however, it be only upon slight implication or inconclusive reasoning that the supposed infraction can be made out, the court should never undertake to rescind and annul the solemn and deliberate act of the legislative department of the government.
The presumption always is that the legislature has judged correctly of its constitutional powers, and the contrary must be clearly demonstrated before a co-ordinate branch of the government can be called upon to interfere between the • people and their immediate representatives. The decisions of all the courts, state and federal, speak a uniform language on this subject. A citation of authorities which establish these principles would include nearly every case in which a question *of constitutional law has ever arisen. The rule referred to has, I believe, the singular advantage of not being opposed even b3r a dictum.
In order to ascertain whether the act in question is a plain violation of the constitution, and a clear usurpation of authority in the law making jpower, the true tests to be applied are — 1st, Is the act in question in the nature of legislative power? 2d, Does the constitution expressly, or by clear implication, forbid the exercise of such power?
If the act be within the general scope of legislative power, and if it be not forbidden either expressly or by clear implication, either by the state or federal constitutions, it is valid.
To make it void, it must be clearly not an exercise of legislative power, or else be forbidden so plainly as to leave the case free from all doubt.
That taxation is a legislative power, has never been questioned in this country. The power to tax rests upon necessity, and is inherent in every sovereignty. The legislature of every free state will possess it, under the general grant of legislative power, whether particularly specified in the constitution among the powers to be exercised by it or not. Cooly’s Const. Lim. 479.
It was said by Chief Justice Marshall, in Providence Bank v. Billings, 4 Peters R. 514, 563: “The power of legislation, and consequently of taxation, operates on all the persons and property belonging to the body politic. This is an original principle, which has its foundation in society itself. It is granted by all for the benefit of all. It resides in government as a part of itself, and need not be reserved when property of any description, or the right to use it in any manner, is granted to individuals or corporate bodies. However Absolute the right of an individual may be, it is still in the nature of that right that it may bear a portion of the public burthen; and that portion must be determined by the legislature. ’ ’
But this court has declared the same principle in the most explicit and emphatic terms. In Eyre v. Jacobs, sheriff, 14 Gratt. 426, Judge Lee, delivering the opinion of the court, said: “There is certainly one proposition which will not be questioned; and that is, that the legislature possesses the full, absolute, sovereign power of taxation, excepting so far as it ma3' have been *631 surrendered to the general government, or may be interdicted by the constitution of the United States, or as it may be controlled by the restrictions and mandates of the constitution of the state. And this power, it is most important, should be sustained and upheld as essential to the very existence of the government of the state, and of providing the means of vindicating her sovereign authority. We do not go to the constitution to see what powers of taxation are given to the legislature, but what restrictions and limitations upon its general sovereign powers, are imposed by its provisions.
“If, therefore, the power to tax any subject whatever is not excluded by the terms of the constitution, or by necessary and inevitable implication, it must exist in the general assembly to be exercised by that body as wisdom and a proper sense of justice shall direct.”
It is clear, therefore, upon principle and authority, that the act in question is clearly within the grant of legislative power. And if there be nothing in the provisions of the constitution to limit or control the exercise of that power, it is sovereign, absolute and supreme.
Get us now enquire whether the constitution has *limited or restricted this general power of taxation, conferred exclusively upon the legislative department of the government, so as to prohibit the legislature from imposing a license tax on merchants. That there is no such express prohibition will be conceded by all. If such prohibition exists at all it is only by implication, and such implication must be clear and unquestioned, before it can operate as a restriction of that supreme power over the subject of taxation, which under every system of free government is vested solely in the legislative department.
Two provisions of the constitution are invoiced by the learned counsel for the ap-pellees as furnishing, by clear implication, a prohibition upon the legislature to impose a license tax upon merchants. They are contained in the first and fourth sections of article ten of the constitution, and read as follows: § 1. “Taxation, except as hereinafter provided, whether imposed by the state, county or corporate bodies, shall be equal and uniform, and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained and prescribed by law. No one species of property from which a tax may be collected shall be taxed higher than other species of property of the same value.”
‘i 4. “The general assembly may levy a tax on incomes in excess of six hundred dollars per annum, and upon the following licenses, viz: the sale of ardent spirits, theatrical and circus companies, menageries, jugglers, itinerant peddlers, and all other shows and exhibitions for which an entrance fee is required; commission merchants, persons selling by sample, brokers and pawnbrokers, and all other business which cannot be reached by the ad valorem sj^stem. The capital invested in all business operations .shall *be assessed and taxed as other property. Assessments upon all stock shall be according to the market value thereof.”
The argument of the learned counsel for the appellees to show that these two sections furnish, by clear implication, a prohibition upon the legislature to impose a license tax upon merchants, when succinctly stated is this: The fundamental rule of taxation as declared by the first section, is that it shall be “equal and uniform.” That the exceptions to this fundamental rule are those found in the fourth scetion; and this section containing the exceptions to the fundamental rule must be strictly construed; and that the general merchant not being named in this section no license tax can be imposed on him.
Now, in the first place, I think it may well be questioned, (if it has not been already settled by this court,) if the 1st section, art. 10, where it declares the rule of equality and uniformity, does not apply that rule to taxes on property alone; for immediately following the declaration of that rule is the provision that ‘1 all property shall be taxed in proportion to its value.” “No one species of property from which a tax may be collected, shall be taxed higher than any other species of property of the same value.”
A similar provision is to be found in the constitutions of many of the other states of the Union, and the same terms, “equal and uniform,” are employed in most of them. In the constitutions of Tennessee, Louisiana, Arkansas, Missouri, Massachusetts, Illinois, Texas, Wisconsin, Michigan and California, the rule of equality and uniformity is enjoined either in terms or by equivalent expressions, and in giving them construction it has been generally held that the terms “equal and uniform,” apply only to a direct tax on ^property, and that the clause by which such equality and uniformity is prescribed, does not limit the power of the legislature as to the subjects of taxation, but is only intended to prevent an arbitrary taxation of property according to kind or quality, without regard to value. Sedgwick, 502-’3, and cases there cited and note; 14 Gratt. 422, 434-435.
Mr. Sedgwick, in his valuable work no Construction of Statute and Constitutional Law, after referring to the constitutions of the states of the Union having similar provisions to ours, declaring in some form the rule of equality and uniformity and citing decisions construing these provisions, says, “These provisions have been generally held inapplicable to licenses.” Sedgwick 503, note.
But conceding that the terms in the first section are broad enough to cover every subject of taxation, yet, in the language of Judge Samuels in Slaughter’s case, 13 Gratt. 767, “it can only be so applied so far as practicable. ” If a given subject be *632 only susceptible of a modified application of the principle, it must receive this, and not be rejected because the rule cannot be applied with perfect precision to its whole extent and in all its results. 14 Gratt. 422, 435; City of Richmond v. Ould & Carrington, 23 Gratt. 464.
In the construction of the words used in the constitutions of many of the states to the effect that “taxation shall be equal and uniform,*’ the rule to be extracted from numerous decisions would seem to be this: Uniformity must be such as is compatible with the subject matter, and as to licenses the only .uniformity required is, that the tax shall be the same on all those in the same business. Sedgwick, 2d ed. 504, note.
But conceding to the fullest extent the proposition of the learned counsel for the appellees, that the first ^section, article 10, declares the fundamental rule of taxation to be applied to all subjects of taxation, and that the fourth sec.tion only enunciates the exceptions to the general rule, the question then recurs, are merchants within the exception? That merchants are not excluded from the exceptions in express terms is certain. Are they excluded by clear implication? The argument is, that, because the general merchant is not specifically designated in- section four, which includes commission merchants, that therefore the general merchant is excluded from the exception, according to the maxim of the law,, expressio unius est ex-clusio alterius. But this argument proves too much. It would sweep away the power of taxation from a large class of subjects, the constitutionality of which has never been questioned by any one, and in some cases which have already been affirmed by this court as within the power of taxation, by a license tax. Bewellen, Sergeant v. Iyocharts, and Hirsh’s case, 21 Gratt. 570, 785.
It would restrict the whole power of taxation by the license system to the classes and subjects named in the fourth section. This surely was never designed by the framers of the constitution. It never could have been their intention to limit the legislative power to the enumerated classes. On the contrary, a large discretion was properly and necessarily vested in the legislature by the addition of the words after the enumeration, the words, “and all other business which cannot be reached by the ad valorem system. ’ ’
It is clear, from the use of this language in the 4th section, that the framers of the constitution did not design to enumerate all the subjects or classes upon which a license tax might .be imposed; but, on the contrary, the language plainly indicates that there *were other occupations and businesses not named, which could not be reached by the ad valorem system. What business can or cannot be reached by the ad valorem system, is not determined by the constitution itself. How is it to be determined? By legislative authority or judicial authority? By that department which makes laws or by that department which expounds them? If the discretion is left somewhere, as it undoubtedly is, by the constitution, to determine what “business” can or cannot be reached by the ad valorem system, is it a legislative discretion or judicial discretion which must be invoked to determine that question? In a doubtful case, certainly it is a matter within the discretion of the legislature, and not a question of judicial determination. Whether the “business” of a merchant is such a “business as cannot be reached by the ad valorem system, ’ ’ is not so plain a question as to remove it beyond legislative discretion. The power to provide the manner of assessment and taxation is peculiarly a legislative power, and much is necessarily left to the discretion of the legislature as to the subjects of taxation and the mode of assessment. Indeed, as we have seen, the legislative power over the whole subject of taxation is supreme, except where it is limited by the organic law; and the judiciary will .only enforce those limitations which the constitution clearly imposes, and not those which may be argumentatively' implied from a doubtful construction of its provisions.
But this clause of the constitution has already received a judicial construction by this court. In Lewellen, Sergeant &c. v. Bockhart, 21 Gratt. 570, the president, speaking for the whole court, said: “The legislature must, in the nature of things, have a very large discretion in det'er-mining the question as to what*business can be reached by the ad valorem system, within the meaning of the constitution, The subject is indefinite in its nature, and although the instances enumerated in the constitution afford material aid in ascertaining the meaning of its framers in the use of the general words which follow the enumeration, still much room is necessarily left for the exercise of legislative discretion in the matter.” See also Hirsh’s case, lb. 785.
I am therefore of opinion that it is for the legislature and not the judiciary to determine the question whether the business of the general merchant is such a business as cannot be reached by the ad valorem system.
The legislature in its wisdom, has determined that the general merchant belongs to that class from whom a license may be required. We cannot say that it is clear he does not. It is the business of the merchant upon which the license tax is imposed. We cannot say it is clear his business can be reached by the ad valorem system. A tax upon his capital may not reach the value of his business. He may do an immense business, with large profits, on a very small capital, or upon no capital at all. He may use and disuse his capital in different amounts and at different times during the year. His purchases and sales may go on fluctuating in price and amount during the year, and the capital employed.be skilfully turned over many times, with growing profits. The legislature might well deter *633 mine that a business like this cannot be reached by the ad valorem system.
But it being- a matter within their discretion (because, to say the least, it is doubtful whether there is any limitation on their power), their determination of *the question is final, and the judicial department of the government cannot interfere.
Reference was made in the argument to the debates of the convention which framed the present constitution, and much stress was laid upon them by two of the able counsel for the appellees, as furnishing important aids in the construction of the constitutional provisions we have been considering, and as giving (as they insist) indubitable proofs that it was the intention of its framers to prohibit the legislature from imposing a license tax upon merchants.
My great respect for the learned counsel, and the earnestness with which they pressed this view of the subject, has induced me carefully toread the “Debates” referred to. But after reading all the speeches reported on the subject of the merchants license tax, I am constrained to say that at last the judicial construction must be determined by the sections themselves (sec. 1 and 4, art. 10,) as they were adopted and now appear in the constitution. It is true that there was much general discussion and vehement declamation as to whether the cities and towns or the country should bear the greater burthens of taxation, and there was a large party in the convention in favor of exempting the general merchant from a license tax, and of prohibiting the legislature from imposing a tax in that form. But the pregnant fact stands out, commanding judicial recognition upon a question of construction, that no such prohibition was incorporated in the constitution ; but, on the contrary, it was left to the discretion of the legislature to impose a license tax upon certain enumerated classes and subjects, and on “all other business which cannot be reached by the ad valorem system, ’ ’
*If it had been the purpose of the framers of the constitution to prohibit the legislature from imposing a license tax on merchants, how easy it would have been so to declare by express prohibition. It had been the policy of the state for more than half a century, to tax merchants under the form of a license system, and it was one of the largest and most valuable sources of the public revenues. If it was the purpose to change this time-honored legislative policy, why was it not done by express declaration of the organic law? A single line might have declared this restriction on legislative power. But that line was never written, and after all the discussion on the subject, article ten was adopted as it now appears in the constitution.
Much has been said in argument about the injustice and inequality of this tax in imposing unequal burthens upon a large and influential class of our fellow-citizens, and of its tendency to destroy the commercial prosperity of the cities and towns of the state. With all this, as a judicial tribunal, we have nothing to do. We cannot correct the errors, if errors there be, of the legislative department of the state. We have nothing to do with matters of legislative policy. We cannot declare a legislative act void because it may conflict with our opinions of policy, expediency or justice. We may think that the powers conferred by the constitution upon the subject of taxation are too great, and dangerous to the rights of the people, and that limitations are necessary ; but we cannot affix them, if the boundaries of power have not been previously affixed by the constitution.
If the legislation complained of is unjust and unequal, unwise and oppressive, to any particular class, (about which we express no opinion), the remedy for unwise and oppressive legislation, within constitutional ^bounds, is by an appeal, not to the courts, but to the justice and patriotism of the representatives of the people. If this fails, the people, in their sovereign capacity, may correct the evil. But the courts cannot assume their rights.
In the language of Chief Justice Marshall: “The wisdom and justice of the representative body and its relations with its constituents, form the only security, where there is no express limitation, against excessive taxation and unwise legislation generally. ’ ’
I am of opinion for the reasons given, that the 104th section of the act approved April 30th, 1874, entitled “An act for the assessment,-levy and collection of taxes, ” is not in conflict with any provision of the constitution, and is therefore valid. The judgment of the Hustings court of the city of Richmond must therefore be reversed.
The other judges concurred in the opinion of Christian, J.
Judgment reversed.

Taxation — Constitutionality.—See Norfolk v. Norfolk Landmark Co., 95 Va. 566, 28 S. E. Rep. 959; Helfrick v. Commonwealth, 29 Gratt. 848; Mackin v. Taylor County Court, 38 W. Va. 338, 18 S. E. Rep. 632; Wheeling Bridge & T. Ry. Co. v. Paull, 39 W. Va. 142, 19 S. E. Rep. 551.