## D. S. M. Fretwell v. City of Troy, *et al.*

| 18 | 271 |
| 52 | 635 |
| 18 | 271 |
| 56 | 360 |
| 18 | 271 |
| 57 | 513 |
| 18 | 271 |
| 62 | 640 |
| 18 | 271 |
| e68 | 564 |
| 18 | 271 |
| 74 | 168 |
| 18 | 271 |
| 75 | 274 |
| 75 | 270 |

1. MUNICIPAL CORPORATIONS; *Power to Tax Employments.* There being no special restriction thereon in the constitution of this state, the legislature may confer upon municipal corporations the power to tax employments, as well as property.

2. LICENSE-TAX; *Revenue.* Section 48 of chapter 60 of laws of 1871, which in terms authorizes cities of the third class to levy and collect a *license-tax* on certain occupations, was designed for purposes of revenue, rather than of police regulation, and authorizes a tax on those occupations.

3. ———— Whether it be true or not, that a license-tax falls within the general rule of taxation, that it knows no other limit than the discretion of the taxing power, it cannot be doubted that before an ordinance of a city authorized to collect taxes should be declared void on account of the amount of the license, it should appear that an unjust discrimination has been made against the business licensed by casting upon it an undue share of the expenses of the city government; for though the license-tax be large, *non constat* but that all other occupations and property are proportionally taxed.

4. ———— *Per Diem License-Tax.* In cities of the third class, that is, cities containing not more than 2,000 inhabitants, and in which it is matter of common knowledge that permanent auction stores are scarcely ever found, a license-tax of five dollars a day for sales by auction, is not so high that courts can adjudge it void as unreasonable and oppressive, or in restraint of trade.

5. ———— A provision in the statute, that license-taxes "shall be at such rate per year as shall be just and reasonable," does not render void an ordinance requiring in cases of auction licenses the payment of so much "for each day of the continuance of such auction."

6. "AUCTION;" "AUCTIONEER;" *Separate Licenses Required.* In the first section of an ordinance it was provided that "before any person shall proceed to sell at public auction merchandise of any class whatever, he

shall first obtain a license for an auction;" and in the second, that "any person desiring to exercise the office or calling of an auctioneer, shall first obtain a license therefor." *Held*, That there was no identity between these two sections in the subject-matter of the license; that the first refers to the party who has goods which he is seeking to have sold by auction, and the second to the party by whom the outcry of the sale is to be made.

*Error from Doniphan District Court.*

FRETWELL was an auctioneer, carrying on his avocation as such in the *City of Troy*, Doniphan county. He paid the regular license-tax, and procured an "auctioneer's license," 21st January 1875, for one year from that date. On the 3d of February following, the city council duly passed an ordinance, which was duly published on the 5th, as follows:

ORDINANCE NO. 47—IN RELATION TO AUCTIONS, AND AUCTIONEERS.

*Be it Ordained by the Mayor and Council of the City of Troy:*

SECTION 1. Before any person shall proceed to sell at public auction within the limits of the city of Troy, merchandise of any kind whatever, he shall first obtain a license for an auction, and shall pay the sum of five dollars for each day of the continuance of such auction.

SEC. 2. Any person desiring to exercise the office or calling of an auctioneer, within the city, shall first obtain a license thereof by paying into the city treasury the sum of ten dollars per year; provided, that a license may be granted to an auctioneer for less than one year by the applicant paying one dollar per day for such license.

SEC. 3. Any person convicted of carrying on an auction without license in violation of the provisions of section one of this ordinance, shall be fined not less than $25, nor more than $50, for each offense. And any person acting as auctioneer without license, in violation of section two of this ordinance, shall on conviction be fined no less than $5, nor more than $25, for each offense.

SEC. 4. Ordinances No. 22 and 23, in relation to auctions, and auctioneers, are hereby repealed.

On the 6th of February *Fretwell* was arrested by City Marshal *Bailey*, and taken before Police Judge *Soper*, charged with violating section one of said ordinance No. 47. It does not appear from the record that *Fretwell* was required to take out a new license as "auctioneer," but the complaint was, that he had not obtained "a license for an auction." He claimed that "he the said Fretwell had no interest whatever in the goods he was selling, or that he proposed to sell, but was selling the same for another person"—but it is not shown who such "other person" was. The police judge

fined him $25, and costs. He thereupon commenced an action in the district court against the *City of Troy*, and against *Bailey* and *Soper*, marshal and police judge, to enjoin them from enforcing the collection of said fine and costs, and to restrain them from interfering with him in the further prosecution of his business or calling of auctioneer, which he claimed the right to carry on under his license of 21st January, without procuring license to conduct an "auction." He applied to the district judge, at chambers, on the 15th of February, for a temporary injunction, which application was denied. Afterward the defendants demurred to the plaintiff's petition, on the ground that it did not state facts sufficient to constitute a cause of action; and the district court, at the March Term 1875, sustained said demurrer, and gave judgment against the plaintiff for costs. From the order refusing a temporary injunction, and from the decision sustaining the defendants' demurrer, *Fretwell* appealed, and brings the case here on error.

*D. M. Johnson*, and *W. D. Webb*, for plaintiff.
*N. B. Wood*, and *N. Price*, for defendants.

The opinion of the court was delivered by

BREWER, J.: Two questions are presented in this case. The first turns on the validity of an ordinance of the city of Troy, a city of the third class, imposing a license-tax on auctions. This ordinance was passed on the 3d of February 1875, and required that for all sales at public auction a license should be obtained, and that for this license five dollars a day should be paid. It is said that this ordinance is void because "in contravention of common right, unreasonable, and in restraint of trade," and because the council "had no authority to tax by the day, only by the year." Neither of these objections, we think, is good. Express authority is given by the statute to levy and collect a "*license-tax*" upon various exhibitions, professions, and avocations, including therein "merchants of all kinds;" and to make more clear

that it is not regulation, but revenue, which is authorized, the section closes with a proviso as follows: "provided however, that all scientific and literary lectures, * * * shall be exempt from such *taxation*," etc. (Laws 1871, p. 130, § 48.) That in the absence of constitutional restrictions, and we have none thereon, the legislature may authorize municipalities to tax employments as well as property, must we think be conceded. Judge Dillon thus sums up the authorities: "These cases show some diversity of opinion as to the right to tax particular employments, as distinguished from property; but the correct view, it is submitted, is this: unless specially restrained by the constitution, the legislature may provide for the taxing of any occupation or trade, and may confer this power upon municipal corporations. But such taxes are apt to be inequitable, and the principle not free from danger of great abuse. Hence, ordinances of this character ought not to be sustained, unless the authority be expressly, or otherwise unequivocally, conferred." Dillon on Munic. Corp., § 291, note. See also *City of Leavenworth v. Booth*, 15 Kas. 635; Cooley on Const. Lim. 201, 495; *Duraile's Appeal*, 62 Penn. St. 491; *Hodgson v. New Orleans*, 21 La. An. 301; *St. Louis v. Boatmen's Ins. Co.*, 47 Mo. 150; *St. Louis v. Marine Ins. Co.*, 47 Mo. 163; *St. Louis v. Laughlin*, 49 Mo. 559; *St. Charles v. Noble*, 51 Mo. 122; *Osborne v. Mobile*, 44 Ala. 493; *Bates v. Mobile*, 46 Ala. 158; *Goldthwaite v. Montgomery*, 50 Mo. 486; *Mason v. Trustees Lancaster*, 4 Bush. (Ky.) 406; *Kinper v. Louisville*, 7 Bush. 599; *Walcott v. The People*, 17 Mich. 63; *Kitson v. Ann Arbor*, 26 Mich. 325; *Darling v. St. Paul*, 19 Minn. 389; *Comm'rs Edenton v. Caplehart*, 71 North Car. 156; *Wiggins v. Chicago*, 68 Ill. 372; *Collinsville v. Cole*, 78 Ill. 114; *Wright v. Mayor*, 54 Ga. 645; *State v. Gagley*, 5 Ohio 14. Regarded as a tax, therefore, it comes within the general proposition concerning taxation, that it knows no limit other than the necessities of the public treasury, and the discretion of the taxing power. Or perhaps more correctly, it may be said in respect to this, as a municipal tax, that the

mere amount of the tax does not prove its invalidity. The amount of the city indebtedness, the necessary expenditures of the municipality, may require an equally high rate of taxation upon all employments, and all property, so that however large this might seem to be, being in harmony with all other taxation, and necessary to meet the legitimate demands on the treasury, it could not be said to be unreasonable. This seems to avoid the argument of the learned counsel, that such a license, amounting in a single year to over \$1,500, is oppressive, unreasonable, and in restraint of trade. For while it may not be true, that a city having authority to collect revenue by license may impose any sum, however large, as license, and thus in effect destroy certain kinds of business, yet before in such a case an ordinance imposing a license is declared void on account of the amount therefor, it should appear that the necessities of the city do not require so large a revenue, or that there has been an unjustifiable attempt to discriminate against certain kinds of business by casting the whole burden of taxation upon them.

But is the amount charged for license in this case so enormous as to be unreasonable and oppressive? To pay over \$1,500 a year for carrying on a permanent auction business, would seem excessive. But we must notice that this provision is for cities of the third class, cities not containing more than 2,000 inhabitants, and that in places of such small size a permanent auction-store is a thing almost unheard of. The only auctions there held, are, when some citizen closes out his household or other goods by an auction of one or two days' duration; or when some wandering merchant comes with a flourish of handbills, posters, and other advertisements, to work off a stock of goods by a week or two's rapid sales at auction. The latter really interferes with the business of the regular merchant; and for neither, is a license-tax of five dollars a day apparently exorbitant. A license of fifty dollars a day is no uncommon demand upon circuses, and other traveling shows, and may be fair and reasonable, while a similar demand upon permanent exhibitions would

work a practical destruction of the business. Nor does the provision that license-taxes "shall be at such rate per year as shall be just and reasonable," prevent a charge of so much per day. The purpose of that section was to prescribe the method of computing the amount of taxes, and that was by the time and not by the amount of business. It did not compel the council to exact a year's license in every case, or prevent them from graduating the amount of the license by the actual time employed in the business licensed. We are forced therefore to the conclusion that, with no other evidence than that now before us, the ordinance must be held valid. With the wisdom or policy of such municipal legislation, this court has nothing to do. That is a matter for the separate determination of each municipality.

The other question involves the relation of the terms "auction," and "auctioneer." The ordinance purports to require licenses for both auctions, and auctioneers. The first section reads: "Before any person shall proceed to sell at public auction, * * * merchandise of any class whatever, he shall first obtain a license for an auction," etc.—while the second is as follows: "Any person desiring to exercise the office or calling of an auctioneer, * * * shall first obtain a license therefor," etc. Do these two sections reach to the same matter, so that obtaining a license under one, is equivalent to a license under both, and a bar to any prosecution under either? We think not. There is a clear distinction between the two. The one applies to the party who has goods which he desires to dispose of by auction, and the other to the party who makes the out-cry. The same party may occupy both positions. He may have goods to sell at auction, and he may be his own auctioneer; but this is neither necessarily nor generally so. The rule is, for one to act as the salesman, the auctioneer, for others who have goods to sell. One, breaking up housekeeping, advertises his furniture for sale at auction. Another, desiring to close out a stock of goods, does the same, and each names a third party as auctioneer. The latter is simply the crier, one who makes it

a business to act as the agent of others in this particular manner of selling goods. His business is that of an auctioneer; and for carrying on that business he is required by the second section to have a license. The party who has goods to sell, and desires to sell them at auction, and obtains the services of the auctioneer therefor, is the party who must take out the license required by the first section. These considerations dispose of the case, and compel an affirmance of the judgment.

It is understood that case No. 679, between the same parties, is controlled by the same questions; and the same judgment will be entered in that case.

All the Justices concurring.