THE CITY OF NEWTON, *et al.*, V. T. B. ATCHISON, *et al.*

1. LICENSE TAX ON BUSINESS; *Power of Legislature.* In the absence of any inhibition, express or implied, in the constitution, the legislature has power, either directly to levy and collect license taxes on any business or occupation, or to delegate like authority to a municipal corporation.

2. OCCUPATION TAX, *Valid.* In the constitution of this state there is no such inhibition, express or implied. Section 1 of article 11 applies exclusively to taxation of property, and does not refer to license taxes; neither does it impliedly prohibit the collection of such taxes.

3. ———— Section 3 of chapter 40, Laws 1881, gives express authority to cities of the second class to levy and collect license taxes.

4. POWER TO TAX; *Restriction by Legislature.* While it may be conceded under ₰ 5, art. 12 of the state constitution, that in the organization of cities some restriction should be imposed on their power of taxation, assessment, etc., so as to prevent the abuse of such power, yet what restrictions there shall be is a matter for the legislature to determine; and if any have been imposed, the courts may not interfere on the ground that such restrictions do not seem adequate. And *further held,* that in the organization of cities of the second class there are sufficient restrictions to uphold the grant of power to levy and collect license taxes.

5. LICENSE TAX — *Graduation.* It is no objection to the validity of a license tax that, instead of being a fixed sum, it is graduated by some standard, provided such standard is reasonably fair and just.

6. TAXATION, *When Not Double.* That a tax which is in terms a license tax upon merchants is graduated by the average amount of stock, and is thus proportioned in the same manner as the ordinary property tax, does not change its character, or transform it from a license to a property tax, or make it in any illegal sense double taxation.

*Error from Harvey District Court.*

ACTION by *T. B. Atchison* and another, (partners as Atchison & Knowlton,) and others, against the *City of Newton* and three others, to perpetually enjoin said city and its officers from enforcing against plaintiffs, as hardware and implement merchants therein, a certain ordinance levying a business license tax against them. March 6, 1883, Hon. L. HOUK, judge of the district court, at chambers, overruled

defendants' motion to dissolve a temporary order of injunction theretofore granted in favor of plaintiffs. This ruling the defendants bring to this court. The facts are sufficiently stated in the opinion.

*Charles Bucher*, city attorney, and *C. S. Bowman*, for plaintiffs in error.

*A. L. Greene*, *John Reid*, and *J. W. Ady*, for defendants in error.

The opinion of the court was delivered by

.BREWER, J.: The question in this case is as to the validity of a certain ordinance of the city of Newton, providing for the levy and collection of a license tax. It is the same ordinance which was presented in the case of *McGrath v. City of Newton*, 29 Kas. 364. In that case certain technical objections to the validity of the ordinance as a whole were considered and disposed of. But a full inquiry into all the questions discussed by counsel was declined, on the ground that by reason of a manifest misjoinder of causes of action the ruling of the district court was correct. The plaintiffs in the present case, defendants in error here, were all hardware merchants, and within the rule laid down in *McGrath v. City of Newton*, could properly join as plaintiffs in this action. They challenge the validity of this ordinance so far as it imposes upon their business, that of hardware merchants, a license tax. Some questions of practice are presented and discussed, but we shall not stop to consider them, preferring to address our inquiry to those which are substantial and fundamental. The first section of the ordinance contains all the facts necessary to a full understanding of the questions involved. That section reads:

"That a license tax per annum is hereby levied upon all merchants or persons engaged in merchandising, as follows, to wit: Five dollars upon all persons whose average amount of stock does not exceed one thousand, and two dollars and fifty cents in addition thereto for every one thousand dollars or fractional part thereof in excess of the first thousand dollars."

Before noticing some specific objections which are made to this particular tax, we think it proper to state certain general propositions which underlie this matter of a license tax.

*First.* In the absence of any inhibition, express or implied, in the constitution, the legislature has power, either directly to levy and collect license taxes on any business or occupation, or to delegate like authority to a municipal corporation. This seems to be the concurrent voice of all the authorities. In 1 Dillon on Municipal Corporations, 3d ed., § 357, note, the author says: "Unless specially restrained by the constitution, the legislature may provide for the taxing of any occupation or trade, and may confer this power upon municipal corporations." In Burroughs on Taxation, page 148, is this language: "Where the constitution is silent on the subject, the right of the state to exact from its citizens a tax regulated by the avocations they pursue, cannot be questioned." In *Savings Society v. Coite*, 6 Wall. 606, the supreme court of the United States thus states the law: "Nothing can be more certain in legal decision than that the privileges and franchises of a private corporation, and all trades and avocations by which the citizens acquire a livelihood, may be taxed by a state for the support of the state government." (*Hamilton Co. v. Massachusetts*, 6 Wall. 638; Cooley on Taxation, 384 to 392, 410.) On page 384 the author observes. "The same is true of occupations; government may tax one, or it may tax all. There is no restriction upon its power in this regard unless one is expressly imposed by the constitution."

In *State Tax on Foreign-held Bonds*, 15 Wall. 300, Field, J., among other things, speaking of the power of taxation, says:

"It may touch property in every shape, in its natural condition, in its manufactured form, and in its various transmutations. And the amount of taxation may be determined by the value of the property, or its use, or its capacity, or its productiveness. It may touch business in the almost infinite forms in which it is conducted; in professions, in commerce, in manufactures, and in transportation. Unless restrained

by the constitution, the power as to the mode, forms and extent of taxation is unlimited."

(See also the authorities collected in *Fretwell v. City of Troy,* 18 Kas. 274.) Nor does this rest alone upon a mere matter of authority. Full legislative power is, save as specially restricted by the constitution, vested in the legislature. Taxation is a legislative power. Full discretion and control therefore in reference to it are vested in the legislature, save when specially restricted. There is no inherent vice in the taxation of avocations. On the contrary, business is as legitimate an object of the taxing power as property. Oftentimes a tax on the former results in a more even and exact justice than one on the latter. Indeed, the taxing power is not limited to either property or avocations. It may, as was in fact done during the late war and the years immediately succeeding, be cast upon incomes, or placed upon deeds and other instruments. We know there is quite a prejudice against occupation taxes. It is thought to be really double taxation. Judge Dillon well says that "such taxes are apt to be inequitable, and the principle not free from danger of great abuse." Yet, wisely imposed, they will go far toward equalizing public burdens. A lawyer and a merchant may, out of their respective avocations, obtain the same income. Each receives the same protection and enjoys the same benefits of society and government. Yet the one having tangible property pays taxes; the other, whose property is all in legal learning and skill, wholly intangible, pays nothing. A wisely-adjusted occupation tax equalizes these inequalities. But after all, these are questions of policy, and for legislative consideration. It is enough for the courts that both occupation and property are legitimate objects of taxation; that they are essentially dissimilar; that constitutional provisions regulating the taxation of one do not control that of the other; and that there are no constitutional inhibitions on the taxation of business, either by the legislature directly, or by municipal corporations thereto empowered by the legislature.

*Second.* There is no inhibition, express or implied, in our

constitution, on the power of the legislature to levy and collect license taxes, or to delegate like power to municipal corporations. It is not pretended that there is any express inhibition. It has been contended that § 1, art. 11, creates an implied inhibition, and this because it reads that "the legislature shall provide for a uniform and equal rate of assessment and taxation." But that section obviously refers to property, and not to license taxes. In *Hines v. City of Leavenworth*, 3 Kas. 200, this court said:

"It will be observed that the constitution does not in terms require that the property in the state should be taxed according to its value, but it must be apparent to everyone that such was the intention of the constitution-makers. Taxes cannot be levied by an equal and uniform rate, except upon the value."

In Burroughs on Taxation, § 54, referring to the various provisions in the different constitutions as to uniformity and equality, the author adds:

"These provisions, as a general rule, are held to apply to property alone, and not to include taxation on privileges or occupations."

Sedgwick, in commenting upon this subject, says:

"In construing these provisions, it has been held, in many of the states, that the words 'equal' and 'uniform' apply only to a direct tax on property, and that the clause in regard to uniformity of taxation does not limit the power of the legislature as to the objects of taxation, but was only intended to prevent an arbitrary taxation, according to the kind or quality, without regard to value. Specific taxes have therefore been sustained as a valid exercise of the legislative power." (See Sedg. on Stat. and Const. Law, 2d ed., 504–507.)

In *Baker v. City of Cincinnati*, 11 Ohio St. 540, the supreme court, upon kindred constitutional sections, makes these observations:

"Now neither of these sections, in terms, prohibits granting licenses and making a charge therefor, or the imposition of a tax on a license. The second section requires the taxing of all property by a uniform rule. A license cannot be re-

garded as property. (*Exchange Bank v. Hines*, 3 Ohio St. 1–7.) It is not, therefore, to be taxed as property under that section. An express direction to impose a tax on all property by a uniform rule does not necessarily exclude taxation upon that which is not property, or cover the whole ground included within the limits of the taxing power. (*City of Zanesville v. Richards*, 5 Ohio St. 589, 593.)"

See also *Walcott v. The People*, 17 Mich. 68; *Kitsen v. Mayor*, 26 Mich. 325; *City v. Sternberg*, 4 Mo. App. 453; same case, 69 Mo. 289; *City v. Green*, 7 Mo. App. 468; *Glasgow v. Rowse*, 43 Mo. 490; *Express Co. v. St. Joseph*, 66 Mo. 675; *Sacramento v. Stage Co.*, 12 Cal. 134; *Sacramento v. Crocker*, 16 Cal. 119; *Ex parte Hurd*, 49 Cal. 557; *Slaughter v. Commonwealth*, 13 Gratt. 767; *Commonwealth v. Moore*, 25 Gratt. 951; *Mayor, &c., v. Mc Williams*, 52 Ga. 251; *Henry v. The State*, 26 Ark. 523; *Anderson v. Kerns's Draining Co.*, 14 Ind. 199; *Osborne v. Mayor, &c.*, 44 Ala. 493; *Ex. Co. v. Mayor, &c.*, 49 Ala. 404; *Mason v. Trustees*, 4 Bush, 406; *Meriam v. City*, 14 La. An. 318; *Goldsmith v. City*, 31 La. An. 646; *Sears v. West*, 1 Murph. N. C. 291; *Comm'rs v. Patterson*, 8 Jones N. C. L. 182; *City of Leavenworth v. Booth*, 15 Kas. 635; *Fretwell v. City of Troy*, 18 Kas. 271; *Francis v. Rld. Co.*, 19 Kas. 303.

Passing now to some specific questions raised as to this particular tax, we remark —

*Third.* That § 3 of chapter 40, Laws of 1881, gives express authority to levy and collect license taxes on certain occupations. In the case of *Fretwell v. City of Troy*, supra, we expressed the same opinion in reference to a similar section. Counsel in this case call our attention specifically to the matter, and urge a reëxamination. We have made such reëxamination. We think our former opinion correct, and that there are additional reasons why the same construction should be given to the section now in question. The language of the section seems plain. It reads, "The city council shall have exclusive authority to levy and collect a license tax on auctioneers," etc. We cannot see how language can be plainer. Every part of the sentence points toward this power. The

verbs used are "levy and collect," words generally used in reference to taxes, and not very apt in respect to mere licenses. The city is authorized to levy and collect a license tax. The principal word here is "tax," and the term "license" simply qualifies and describes it. Where nothing but license is contemplated, the language ordinarily is direct, and grants power "to license," or "to license and regulate," or "to adopt rules and regulations for licensing." But again, the case of *Fretwell v. the City of Troy*, supra, was decided in 1877. It gave construction to the words "levy and collect a license tax." With that construction before them the legislature in 1881 enacted this § 3, containing these words. Is it not clear that, knowing the construction which had been given to them, the legislature by using them intended to grant this power to the city?

*Fourth.* The validity of the tax is challenged on the ground that in the charter there has been no compliance with § 5, art. 12 of the state constitution, which reads:

"Provision shall be made by general law for the organization of cities, towns, and villages; and their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, shall be so restricted as to prevent the abuse of such power."

It is said that the charter contains no restriction with respect to these license taxes. If it were true that there was absolutely no restriction, it might well be held that the power was not granted; and yet there are very respectable authorities, and indeed the weight of authority seems to be to the effect, that it is purely a matter of legislative discretion. In 1 Dillon on Municipal Corporations, 3d ed., § 50, the author, after quoting from the constitution of New York a section similar to the one in our constitution, observes:

"This obviously enjoins upon the legislature the duty of providing suitable and proper restrictions upon the enumerated powers; but in what these restrictions shall consist, and how they shall be imposed, are subjects left to the discretion or sense of duty of the legislative department, with the exercise of which the courts cannot interfere."

In *Hill v. Higdon,* 5 Ohio St. 248, the court, by Ranney, J., says that a failure of the legislature to observe these constitutional requirements "may be of very serious import, but lays no foundation for judicial correction." In Cooley on Taxation, page 252, we find the law thus stated:

"By some state constitutions it is expressly made the duty of the legislature, in conferring local powers of taxation, to impose restrictions on the power in order to prevent its abuse. Such a provision is addressed to the discretion of the legislature, which will impose such and such only as are deemed advisable."

See also the authorities cited in the note, as well as those in the note to the quotation from Dillon, *supra.*

But this constitutional provision has been before this court, and has here received a judicial construction. (*Hines v. City of Leavenworth,* 3 Kas. 203.) In that case, while the necessity of some restriction was insisted upon, it was held that full discretion as to what restrictions should be imposed was left to the legislature; and that the court would not interfere even though of the opinion that the restrictions were not sufficient to prevent abuses. In that case two or three restrictions of a very trivial nature were adjudged sufficient. . Here it is provided that no tax shall be levied except by ordinance, that such ordinance must receive a majority of all the votes of the councilmen elected, and that the vote must be taken by yeas and nays, and entered upon the record of the proceedings of the council. It is true there is no restriction on the amount of tax which may be levied; no more was there in the case in 3 Kas., *supra.* Instead of being a direct, in that case as well as this, there is only, so to speak, an indirect restriction, and yet if the legislature deems this indirect restriction sufficient, it is not for the courts to ignore it and say it amounts to nothing. As the mayor and councilmen are citizens, and therefore interested in the welfare of the city; as their term of office is brief, and for any attempted misconduct the citizens have thus a speedy relief, and by new officers can largely correct any wrong in the matter of excessive taxation; and as each man's responsibility is not only

fixed but made public by the necessity of a record of his vote, it is evident that some restriction at least is secured by the provisions of the charter, and whether adequate or not, the courts may not interfere.

Further, the mayor and councilmen, who alone order the levy of these taxes, do not acquire unlimited control in the expenditure of the moneys thus raised, for they are by the same charter made personally liable for any moneys appropriated contrary to law. This also furnishes a check. The money when collected does not come into their hands. They can only direct its expenditure in certain specified ways, and are personally responsible for any illegal appropriation. Surely by these provisions the legislature has done something to guard against excessive taxation, and placed some restrictions to prevent an abuse of that power. Therefore this objection to the validity of this tax also fails.

*Fifth.* It is finally objected that this tax is in effect a property tax, and therefore void. This is based upon the language of the section heretofore quoted. The tax upon merchants is graduated by the average amount of stock. If that average does not exceed $1,000, the tax is $5 per annum, and for each $1,000 or fractional part thereof in excess, $2.50. Therefore, being graduated by the amount of property, it is in substance and effect only a property tax. This is the difficult question in the case. The argument is, that the law regards substance rather than form; that you may not do indirectly what you cannot do directly; that it would be clearly invalid to levy a tax on a merchant's property of five mills — that being the levy on all other taxable property — and then impose a second tax of five mills on his property alone. If this cannot be done by a direct tax on his property, it cannot be done indirectly by calling the second tax one on business. The language of the ordinance is similar to that in the general tax law, and the tax is in each case graduated by the average amount of stock. While the right to graduate a business tax may be conceded, yet the graduation must be by some standard which is a fair criterion of the

amount of business.   The amount of stock is not such a cri-
terion, for though one man's stock may be large, his sales
may be few and his business limited; while another whose
stock averages much less may do a much larger business,
selling and replacing with greater rapidity.   The amount of
stock may be a test of property, but not of business.

In support of these views, counsel cite the following
authorities: *Livingston v. City of Albany*, 41 Ga. 21; *Com-
monwealth v. Stodder*, 2 Cush. 572; *Durham v. Trustees*, 5
Cow. 466; *Mayor v. Rld. Co.*, 32 N. Y. 373; *State v. Rld.
Co.*, 40 Md. 22; *State v. Rld. Co.*, 4 S. C. 376; *Orleans v.
Pierre Nongues*, 11 La. An. 740; Burroughs on Taxation,
69 and 70; *Bank-Tax Case*, 2 Wall. 200; Cooley on Tax-
ation, page 164.

But notwithstanding the plausibility of this argument, we
are constrained to think it not sound.   The tax provided by
this ordinance is in terms a tax upon business.   The results
of a tax do not determine its character. ,  Every license tax
compels the party to pay more taxes than his taxable property
justifies.   A merchant and a farmer have each $5,000.   The
property tax on each is the same.   Any license tax imposed
on the former increases his total taxes above the amount prop-
erly chargeable on $5,000.   Yet this does not make the license
tax a tax on property.   Indirectly one's property may be af-
fected.   It will be diminished by so much as is necessary to
pay the license tax.   The argument of counsel carried to its
final results makes against the validity of all license taxes.

Again, graduation in the matter of license taxes is not
only supported by the authorities, but is also eminently just.
A license tax which is the same on a merchant doing an
annual business of $5,000 as upon one doing a like business
of $1,000,000, strikes anyone as unjust, and as distributing
the public burdens very unfairly.   It may be said that the
property tax, being proportioned to the amount of property,
equalizes burdens, and that both, engaged in the same busi-
ness, should pay the same business tax.   But the principles
that justify the graduation in property, apply in business

taxes. The larger the business, the greater protection the and benefit of organized society and government. And if graduation is permissible, then any standard or rule of graduation may be adopted which is reasonably fair and just. And the fact that the same standard is adopted which is used in other taxation does not change the character of the tax. Because a license tax is proportioned in the same manner as a property tax, it does not therefore cease to be a license tax. And that is really the point of counsel's argument. This license tax is graduated as property taxes are graduated. Therefore it is a property tax. The reverse argument would be just as logical, and demonstrate as forcibly, that all property taxes are simply license taxes. The rule of graduation adopted in this case may not be absolutely perfect. The amount of stock does not necessarily determine the amount of business. And yet it is ordinarily a fair criterion. And some objection can be made to any standard suggested. If the amount of sales is named, it can be objected that in some cases profits are large and in others small, so that one with the larger income may pay the smaller business tax. If profits are named, then, as out of a single transaction or two large profits may sometimes be made, one who really does very little business may be charged with a large business tax. Besides, profits are so largely a matter of the merchant's personal knowledge and of his alone, that it would be difficult to practically enforce such a standard with any degree of accuracy. It is hard enough to enforce one based upon the average amount of stock, and yet that is a visible fact. No standard will in all cases be found absolutely perfect and securing equal and exact justice. And while we think the amount of sales would be a fairer standard, yet the amount of stock cannot be pronounced entirely arbitrary and with no reasonable relation to the fact to be determined. It cannot be adjudged that a license tax graduated thereby is by reason thereof invalid.

We shall close this with a brief notice of some of the authorities cited. In the case from 41 Ga., *supra*, the tax

11—31 KAS.

imposed was $1 on each and every horse or mule offered and
sold by or belonging to a horse or mule drover within the
city.   It was held to be a property and not a license tax, but
it was a tax levied directly upon the property — each and
every mule or horse offered or sold.   The case from 2
Cushing simply decides that the power to license and reg-
ulate does not carry with it the power to tax.   To the same
effect are the cases from 5 Cowen and 32 N. Y.   The cases
from 4 S. C. and 40 Md. seem to be cases in which the tax
was laid directly upon the property.   In the case in 2 Wal-
lace, the court held that a tax on the capital of a national
bank was a tax on its property, and as that property consisted
in United States stock, exempt from taxation, the tax was
invalid.   That was a case of a direct tax upon property.
The case of *Orleans v. Nongues*, 11 La. An. 740, is apparently
more to the point.   The ordinance levying the tax in ques-
tion there, reads as follows: "On each and every person
keeping a dairy within the limits comprised between the
upper line of this parish and Verret avenue, a yearly tax of
$2 for each and every cow, payable semi-annually in advance,
$2 per cow."   The court held this bad, because of the dis-
crimination, not taxing all dairymen, but only those within
certain limits.   This point settled and disposed of the case,
and it was unnecessary for the court to consider any other
question; but it appears, from the opinion, that counsel for
the parish, or city, defended the legality of the tax, upon
the ground that it was a tax upon property and not a tax
upon persons pursuing an occupation.   The court held that,
taking that view of it, the police jury had no authority to
levy the tax.   We do not understand the court as squarely
deciding that this was a property tax, and yet the language
of the ordinance certainly leaves it a very doubtful question.
See, in connection with this case, the opinion of the same
court in 14 La. An., *supra*.

From Cooley on Taxation, 164, counsel quote the follow-
ing:

"There is a sense, however, in which duplicate taxation
may be understood — and which, we think, is the proper

sense—which would render it wholly inadmissible under any constitution requiring equality and uniformity in taxation. By duplicate taxation, in this sense, is understood the requirement that any person or any subject of taxation shall directly contribute twice to the same burden, while other subjects of taxation belonging to the same class are required to contribute but once. We do not see, for instance, how a tax on a merchant's stock, by value, could be supported, when, by the same authority and for the same purpose, the same stock was taxed by value as a part of his property. This is a very different thing from one tax upon property and another upon the business, though the latter may indirectly reach the property; here is no circumlocution, no question of the ultimate effects, but a tax levied twice on the same subject, only under a different name."

We do not understand this as meaning what they claim, but as simply holding that there cannot be two direct taxes upon the same property, it being listed and described under different names. We think that the latter part of the quotation makes the author's meaning clear. See also the note to page 139, in which he says:

"A law which should make no discrimination in the taxation of business, we should say would in some cases produce the grossest injustice and inequality; and it may be seriously questioned whether the requirement of uniformity in the taxation of business could be understood as forbidding the classification of those engaged in the business; for example, underwriters, by the business done or premiums received; merchants, by the capital invested or the sales made, etc., and the apportionment of taxes accordingly."

So also, on pages 384 and 385, he says:

"The methods in which business should be taxed are also in the legislative discretion. The taxes which are most customary are: (1) On the privilege of carrying on the business; (2) on the amount of business done; (3) on the gross profits of the business; (4) on the net profits, or profits divided. But the tax may be measured by other standards prescribed for the purpose, as well as by them."

In *Simmons v. The State*, 12 Mo. 268, the court held that a license tax on lawyers might be graduated. (See also *City of Burlington v. Insurance Co.*, 31 Iowa, 102; *Mares v. Erwin*,

8 Humph. 290; *Osborne v. Mayor, &c.,* 44 Ala. 498; *Ex. Co. v. Mayor, &c.,* 49 Ala. 404; *Ould v. City of Richmond,* 23 Gratt. 464; *Commonwealth v. Moore,* 25 Gratt. 951; *Sacramento v. Crocker,* 16 Cal. 119.) This last was a case where the license was graduated by the amount of monthly sales, and the tax was sustained.

We have prolonged this opinion as far as is necessary. Our conclusion is that the tax cannot be held unconstitutional and invalid. Therefore the courts may not interfere to restrain its collection. If unwise or impolitic, the people can soon put a stop to it and correct any mistake which their officers may make in this respect.

The judgment of the district court will be reversed, and the case remanded with instructions to sustain the motion to dissolve and vacate the order of injunction.

HORTON, C. J., concurring.

VALENTINE, J.: I concur in the decision of this case, for I believe the great weight of authority sustains it; and yet it seems to me almost to trench upon fundamental principles. Where a license tax is properly levied upon those kinds of business and those kinds of occupations which are the proper subjects of municipal regulation, restriction and control, and where such tax is levied for the purpose of regulation and restriction only, I have no doubt of the validity of the tax; and I do not think that it can make any difference in such a case that a large portion of the tax may go into the public treasury to swell the general revenue fund. For, the primary object of the tax not being revenue, but regulation or restriction, the fact that a portion of the tax goes into the public treasury as revenue will not invalidate the tax. But when all the elements of regulation and restriction seem to be wanting, and the only object of the tax seems to be revenue, then does not the tax lose its quality as a license tax and become merely an ordinary revenue tax? And if it becomes merely an ordinary revenue tax, then should it not be levied on property only, and at an equal and uniform rate, as provided by §1, article

11, of the constitution? It seems to me that all taxes whose primary object is revenue, should be levied in accordance with said § 1, article 11, of the constitution, while all taxes imposed for the purpose of regulation or restriction, or possible prohibition, may be levied as license taxes. I do not think that under the authorities we can declare the present license tax unconstitutional, or void, (*Van Baalen v. The People*, 40 Mich. 258, and cases cited in the foregoing opinion of brother BREWER;) and yet I can hardly think otherwise than that the city of Newton violated the spirit of the constitution when it levied license taxes, as it did, upon business and occupations which do not seem to require regulation or restriction, and seemingly for the purpose of revenue only.